[No. B008757. Second Dist., Div. Seven. Mar. 3, 1987.]

DALE W. STAPLES et al., Plaintiffs and Appellants, v.
OTTO HOEFKE et al., Defendants and Respondents.

**[Certified for partial publication.†]**

‡Assigned by the Chairperson of the Judicial Council.

1398

1400

COUNSEL

Albert I. Kaufman for Plaintiffs and Appellants.

Charles L. Crouch, Jr., Mommaerts & Rutledge and Arthur D. Rutledge for Defendants and Respondents.

OPINION

KRIEGLER, J.*—Plaintiffs appeal from judgments entered in favor of defendants on causes of action alleging breach of lease and trespass. Plaintiffs also appeal from the order denying plaintiffs' motion for judgment notwithstanding the verdict, as well as the orders granting costs to defendants and sanctions against plaintiffs for filing a frivolous cost bill.

FACTS

Plaintiff Dale Staples, majority stockholder in plaintiff Optronics Specialty Corporation, signed a lease to rent the premises at 8579 Canoga Avenue in December 1975. The lessor was defendant Otto Hoefke, who owned the building on Canoga Avenue. The suite at 8579 Canoga was at the north end of the building. There were no partitions or walls dividing the

---

*Assigned by the Chairperson of the Judicial Council.

building at the time the lease was signed. The building was ultimately divided into three suites, using the addresses 8579, 8577 and 8575 Canoga Avenue.

Plaintiffs were involved in computerized photography of art work. As a result of this high-tech line of work, plaintiff Staples told the leasing agent for defendant Hoefke that the lease would have to contain language prohibiting excessive vibration by other tenants using drop hammer equipment. The purpose for this was that plaintiffs' cameras had tolerances of as low as 40 millionths of an inch. As a result of Staples' request, the following paragraph was inserted in an addendum to the lease: "18. Lessor agrees not to lease the adjoining southerly unit to a Lessee working with machine tooling that would cause the interior of the building to vibrate (i.e. company with drop hammer type equipment)."

Plaintiffs moved into defendant Hoefke's building in January 1976, and produced their first job in April 1976. Plaintiffs had two large cameras, called Pioneer and Saturn, which were supported by a Barry Serva-Levl Isolation System. The isolation equipment supported the cameras by air suspension, and was intended to isolate the cameras from shocks or vibrations.

Plaintiffs experienced no production problems between April 1976 and the early part of 1977. Beginning in January or February 1977, plaintiffs experienced problems with columnation of the cameras. Each time this occurred, plaintiffs had to recolumnate the cameras, a job requiring two or three people and taking several hours.

Defendant Miller signed a lease with defendant Hoefke for the suite at 8575 Canoga Avenue, the lease term commencing on November 1, 1976. Their suite was the southerly most unit in the building. The lease did not specifically prohibit use of drop hammer type equipment. The lease provision on use of the premises provided as follows:

"6.1 Use. The Premises shall be used and occupied only for light manufacturing, warehousing and related business administration activities.

"6.2 Compliance with Law. Lessee shall, at Lessee's expense, comply promptly with all applicable statutes, ordinances, rules, regulations, orders and requirements in effect during the term or any part of the term hereof regulating the use by Lessee of the Premises. Lessee shall not use or permit the use of the Premises in any manner that will tend to create waste or a nuisance or, if there shall be more than one tenant of the building containing the Premises, which shall tend to disturb such other tenants."

Defendant Miller was involved in the manufacture of leather products, which were mounted and placed in wood frames. The leather was cut on a

five-ton electric press which operated by means of a drop hammer hitting a die to cut the leather.

In late 1978, a loud bang was heard by Juan Martinez, an employee and minority shareholder of plaintiff Optronics. Investigation of the source of the noise lead to discovery that defendant Miller was operating a punch press.

Despite plaintiff Staples' belief that vibrations from defendant Miller's punch press were causing the problem with Optronics' cameras, plaintiff exercised its option to renew the lease because of its favorable terms. There was a dispute regarding the amount of rent under the option agreement, but defendant Hoefke did accept the rent as tendered by plaintiffs.

The foundation of the alleged problems having been established, the essence of the trial came down to a battle of experts regarding the effect of defendant Miller's punch press on plaintiffs' cameras. Plaintiffs' expert, Richard Pitel, conducted his tests in July 1979. Pitel took a series of eight photographs with plaintiffs' Pioneer camera. Pitel would alternately take a photograph with defendant Miller's punch press operating, and then without it operating. Pitel then measured the widths of the lines within the photographs and determined that the widths changed, in random amounts, when the press was on during the photography. The opinion expressed by Pitel was that the punch press caused the lines in the photographs to widen.

Defendants responded with their own expert, Kelvin Merz, who conducted his experiment in 1982. At the time of Merz' experiment, plaintiffs no longer occupied 8579 Canoga Avenue, nor did defendant Miller occupy 8575 Canoga Avenue. Instead, plaintiffs had subleased 8579 Canoga Avenue to defendant Miller. Accordingly, the punch press was in plaintiffs' former place of business when Merz ran his tests.

Merz used an accelerometer to measure acceleration of shocks or vibrations in volts. This measurement can be converted to millionths of inches of movement, known as microinches. Merz believed the movement of the punch press to a different location within the same building was insignificant because the building was symmetrical. Similarly, the passage of three years time between 1979 to 1982 did not have a significant impact on his tests.

Merz conducted a series of three tests, at varying distances and under different conditions, to measure movement due to operation of the press. Merz found the press caused movements in the area of 20 to 50 microinches at the base of the camera. The Barry Serva-Levl Isolation equipment would easily accommodate 100 microinches of movement if operating properly.

Merz' opinion was that if the press caused movement in the camera it was due to malfunction of the isolation equipment.

While Merz was conducting his tests, a train passed by on the railroad tracks across the street from defendant Hoefke's building. The train caused displacement of around 50 millionths of an inch, an amount larger than caused by the press. A representative of Southern Pacific Transportation Company testified that a train was scheduled to go down that track daily except Sundays between 1976 and 1979.

Of a less scientific nature, the defense presented testimony from Brabston Crouch, who went to the scene in 1982 to take photographs of traffic conditions in the area. Crouch conducted two experiments on his own initiative. First, he placed an empty gasoline can on the concrete slab and as trucks drove by, Crouch was able to feel the can vibrate. Second, Crouch filled a coffee can with water, and observed slight ripples as trucks drove down Canoga Avenue. Crouch saw larger ripples as the train passed by.

Plaintiff responded to the testimony of Merz by calling Piotr Moncarz as an expert witness in rebuttal. Moncarz did not criticize how Merz made his measurements or the equipment he used, but he did challenge Merz' conclusions. The flaw in Merz' work, according to Moncarz, was that it measured vibration at floor level, which was not representative of the vibration or movement above floor level on the component parts of the camera. Moncarz also believed that an erroneous assumption by Merz as to the exact location of plaintiffs' camera diminished the shock since a nearby wall would tend to absorb the vibration under the conditions created by Merz.

Not surprisingly, defendants recalled Merz to testify in surrebuttal. Merz expressed the opinion the best criteria for determining displacement was a measurement taken at the slab on which the camera rested.

### PLAINTIFFS' CONTENTIONS

Plaintiffs raise the following issues in the instant appeal:

1. Trespass by vibration was shown as a matter of law;

2. It was error to give repetitive instructions to the jury defining trespass;

3. It was error not to give an instruction defining intentional trespass;

4. The award of attorney's fees to defendant Hoefke should not have been made in that the award would inure to the benefit of his insurance company (a noncontracting party);

5. It was error to preclude plaintiff from cross-examining defendant Miller with questions which would ultimately lead to disclosure of insurance;

6. The motion *in limine* granted by the court precluding plaintiffs from inquiring into the cross-complaint filed by Hoefke against Miller was prejudicial error;

7. The nonsuit with respect to Miller for breach of the lease and with respect to Hoefke for trespass (by negligence) should not have been granted;

8. The evidence of the experiments performed by defendants' expert, Merz, was not relevant in that the conditions of the experiment were substantially dissimilar to the conditions under which the loss occurred and should have been held inadmissible or stricken pursuant to the motions made by plaintiff;

9. The court should have granted the motion of plaintiffs to strike the testimony of Brabston Crouch with respect to the experiment that he did on the grounds that at the time that the experiment was performed the conditions were substantially dissimilar to the conditions that gave rise to the disputed facts;

10. It was error to foreclose the plaintiff from testifying with respect to his prior experience in conducting his type of operations in the vicinity of a railroad line;

11. It was an abuse of discretion to deny plaintiffs' motion for judgment notwithstanding the verdict and plaintiffs' motion for a new trial;

12. The assessment of sanctions in connection with plaintiffs' filing of a cost bill was an abuse of discretion.

I

### THE JURY WAS NOT REQUIRED TO RETURN A VERDICT OF NOMINAL DAMAGES FOR TRESPASS

██ Without directly challenging the sufficiency of the evidence to support the jury's verdict in favor of defendant Miller on the trespass cause of action, plaintiffs contend that because all the expert witnesses agreed vibrations traveled from defendant Miller's punch press to plaintiffs' cameras, a trespass was established as a matter of law. From this premise, plaintiffs argue they were entitled to nominal damages for trespass. Plaintiffs'

ultimate goal in making this argument is that with an award of nominal damages, they would also be entitled to costs and attorney's fees.

■ Trespass is an unlawful interference with possession of property. (*Girard* v. *Ball* (1981) 125 Cal.App.3d 772, 788 [178 Cal.Rptr. 406].) The emission of sound waves which cause actual physical damage to property constitutes a trespass. (*Wilson* v. *Interlake Steel Co.* (1982) 32 Cal.3d 229, 232-233 [185 Cal.Rptr. 280, 649 P.2d 922].) Liability for trespass may be imposed for conduct which is intentional, reckless, negligent or the result of an extrahazardous activity. (*Id.,* at p. 233; *Smith* v. *Lockheed Propulsion Co.* (1967) 247 Cal.App.2d 774, 784 [56 Cal.Rptr. 128, 29 A.L.R.3d 538].)

■ It is true that an action for trespass will support an award of nominal damages where actual damages are not shown. (*Allen* v. *McMillion* (1978) 82 Cal.App.3d 211, 219 [147 Cal.Rptr. 77].) However, nominal damages need not be awarded where no actual loss has occurred. (*Fields* v. *Napa Milling Co.* (1958) 164 Cal.App.2d 442, 448 [330 P.2d 459, 68 A.L.R.2d 1052].) ■ "Failure to return a verdict for nominal damages is not in general ground for reversing a judgment or granting a new trial." (*Gray* v. *Southern Pacific Co.* (1937) 21 Cal.App.2d 240, 247 [68 P.2d 1011].)

A judgment is erroneous in failing to grant nominal damages, however, if nominal damages would carry costs or determine some question of permanent right. (*Sweet* v. *Johnson* (1959) 169 Cal.App.2d 630, 633 [337 P.2d 499].) There was no question of permanent right at trial; the sole issue therefore is whether plaintiffs would have had a right to costs had nominal damages been awarded.

An award of nominal damages in the instant case would not have *entitled* plaintiffs to costs. Costs are *discretionary* where a judgment is within the jurisdiction of an inferior court. (Code Civ. Proc., § 1032, subd. (d).) Here, an award of nominal damages for trespass would have been within the jurisdiction of the municipal court. Where there is no absolute entitlement to costs, the failure to award nominal damages is not reversible error. (*Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924]; *Sweet* v. *Johnson, supra,* 169 Cal.App.2d at pp. 633-634.) Plaintiffs therefore would not have been entitled to costs, as a matter of right, upon return of a verdict awarding nominal damages. Under these circumstances, the general rule that a judgment will not be reversed for a failure to award nominal damages is applicable.

## II*

### IT WAS NOT REVERSIBLE ERROR TO GIVE TWO JURY INSTRUCTIONS RELATING TO TRESPASS

. . . . . . . . . . . . . . . . . . . . . . . .

## III

### THE TRIAL COURT'S FAILURE TO GIVE PLAINTIFFS' PROPOSED INSTRUCTION ON THE DEFINITION OF INTENTIONAL TRESPASS WAS NOT REVERSIBLE ERROR

Plaintiffs contend the trial court committed reversible error in refusing to instruct as follows: "An act which will, to a substantial certainty, result in entry of vibrations on another's land is intentional trespass on which liability may be based.

"The fact that certain manufacturing activities are permitted by local zoning ordinance does not prevent the plaintiffs' recovery of damages for trespassory invasions of their leased property caused by the defendant's conduct in engaging in such manufacturing activities."

Plaintiffs argue this instruction was a correct statement of law based upon *Roberts v. Permanente Corp.* (1961) 188 Cal.App.2d 526 [10 Cal.Rptr. 519], and that no other instructions defined the meaning of "intentional" or "reckless" trespass.

The second paragraph of plaintiffs' refused instruction was covered by another instruction given upon plaintiffs' request.[3] Because the trial court was under no obligation to repeat that portion of plaintiffs' instruction dealing with zoning, we deal only with the effect of the refusal to give the first paragraph dealing with intentional trespass.

Plaintiffs' argument that the refused instruction is a proper statement of law is correct under *Roberts v. Permanente Corp., supra,* 188 Cal.App.2d 526. In *Roberts,* the court held that the "doing of an act which will to a substantial certainty result in the entry of foreign matter upon another's land suffices

---

*See footnote, *ante,* page 1397.

[3]On plaintiffs' request, the jury was instructed as follows: "The plaintiffs may recover damages from the defendant, ARTHUR MILLER individually and doing business as ARTHUR MILLER MANUFACTURING CO., for trespass caused by vibrations even though defendants' business operation was permitted by zoning ordinance."

for an intentional trespass to land upon which liability may be based." (*Id.,* at pp. 530, 531.) The holding in *Roberts* is in accord with the general rule of law in tort cases that intentional conduct includes not only the results the actor desires, but also the consequences which he knows are substantially certain to result from his conduct. (*Schroeder* v. *Auto Driveway Co.* (1974) 11 Cal.3d 908, 922 [114 Cal.Rptr. 622, 523 P.2d 662].)

The trial court gave no other instruction defining intentional trespass. The issue is, therefore, whether under the circumstances in the instant case the erroneous refusal to instruct on intent was reversible. We conclude the error was nonprejudicial for the following reasons.

First, the jury was instructed on the definition of trespass, including that trespass could be committed indirectly by vibration "as a result of intentional acts, recklessness or negligence involving an unreasonable risk of an invasion of the plaintiff's use of their premises." Second, the jury was *not* given erroneous instructions defining intent, which distinguishes the instant case from *Roberts* v. *Permanente, supra,* 188 Cal.App.2d at pages 530-531, in which the trial court erroneously instructed that intentional trespass required an intent to harm. The jury did not receive any erroneous instructions on trespass in the instant case.

Third, the issue of intent was not of major significance at trial. The critical issue at trial was not the character of the act causing the vibration, but instead the crucial issue was whether defendant Miller's punch press *caused* plaintiffs' camera to repeatedly require columnation. Fourth, there is no indication in the record that the jury was confused about what type of act would constitute trespass. (Cf. *Roberts.* v. *Permanente Corp., supra,* 188 Cal.App.2d at p. 531.)

In view of these facts, we conclude that the erroneous refusal to instruct on the definition of intentional trespass was nonprejudicial. It is not reasonably probable that a result more favorable to plaintiffs would have occurred in the absence of the error. (Cal. Const., art VI, § 13; *Agarwal* v *Johnson* (1979) 25 Cal.3d 932, 951-952 [160 Cal.Rptr. 941, 603 P.2d 58].)

IV

ATTORNEY FEES WERE PROPERLY AWARDED TO
DEFENDANT HOEFKE DESPITE THE FACT HIS
INSURANCE CARRIER PAID FOR THE DEFENSE

Defendant Hoefke sought attorney fees in the amount of $35,612.50, as part of cost bill totaling $48,018.37. Plaintiffs contend the

award of attorney fees was improper because (1) it failed to apportion the fees between the breach of contract and trespass causes of action, and (2) the fees would go to defendant Hoefke's insurance carrier, rather than Hoefke, since the carrier provided for defense of the lawsuit.

Plaintiffs did file a motion to tax costs pursuant to Code of Civil Procedure section 1033, but did not argue that attorney fees should be apportioned on the theory attorney fees were proper only on the breach of contract cause of action but not proper for the tort of trespass. (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83].) ▮ The law is clear that a motion to tax costs must state the grounds of the objection; any not stated are waived. (*Mojave and Bakersfield Railroad Company v. Cuddeback* (1915) 28 Cal.App. 439, 441-442 [152 P. 943]; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 124, p. 550; Cal. Attorney's Fees Award Practice (Cont.Ed.Bar 1982) § 8.5, p. 91.) Plaintiffs' failure to object in the trial court to the attorney fee request on the basis fees should have been apportioned constitutes a waiver of the issue.

▮ The remaining issue is whether attorney fees should have been awarded to defendant Hoefke since his representation was paid for by Farmers Insurance Company under a reservation of rights. Plaintiffs argue fees should not have been awarded because the benefit would be to Farmers Insurance Company, a nonparty to the lease which contained an attorney fee provision.

Attorney fees were not awarded to Farmers Insurance Company in the instant case. Fees were awarded to defendant Hoefke pursuant to a judgment rendered on the contract. Hoefke was clearly entitled to attorney fees pursuant to the provisions of the lease. (Civ. Code, § 1717.) There is no evidence in the record that the fees were paid to Farmers Insurance Company by defendant Hoefke. The premise of plaintiffs' argument that the attorney fees inured to the benefit of the insurance carrier has not been established.

The attorney fees provision did not require that defendant Hoefke ultimately incur the expense of attorney's fees. The provision instead stated that the prevailing party "shall be entitled to his reasonable attorney's fees to be paid by the losing party as fixed by the court." The lease does not require that defendant Hoefke "incur" attorney's fees; rather, it provides that the losing party will pay reasonable fees as determined by the court. (*Wiener v. Van Winkle* (1969) 273 Cal.App.2d 774, 788-789 [78 Cal.Rptr. 761].) The lease provision having clearly provided for reasonable attorney's fees, the award of such fees to defendant Hoefke was clearly proper, regardless of whatever separate arrangements existed to provide a defense for him. (*Ibid.*)

Assuming plaintiffs did establish that the fees ultimately went to Farmers Insurance Company, we can perceive of no reason why plaintiffs should profit from defendant Hoefke's foresight in obtaining insurance coverage. Plaintiffs were not entitled to avoid their contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that they sued a defendant who obtained insurance coverage providing a defense.

## V

### EVIDENCE OF INSURANCE COVERAGE ON BEHALF OF DEFENDANT MILLER WAS PROPERLY EXCLUDED UNDER EVIDENCE CODE SECTION 352

On cross-examination of plaintiff Dale Staples, counsel for defendant Hoefke elicited testimony of the friendly relationship between Staples and defendant Miller. This testimony included reference to a hunting trip in Alaska by Staples and Miller, other social activities including their respective wives, and discussions about the merits of the lawsuit. The ostensible purpose of this cross-examination was to establish a basis for defendant Hoefke to argue he was the victim of a collusive lawsuit by plaintiff Staples and defendant Miller.

In response to this questioning, plaintiffs sought to explain that Staples and Miller remained friendly, even after the lawsuit was filed, because defendant Miller had insurance coverage, so he would not personally suffer from the lawsuit. Plaintiffs' theory was that evidence of insurance coverage would allow the jury to understand that Staples and Miller remained friends for reasons other than the lawsuit being collusive.

The trial court ruled that evidence of insurance would not be admitted based upon an objection by defendant Miller. Defendant Hoefke, on the other hand, argued in favor of admission of evidence of Miller's insurance, apparently intending to argue that plaintiff Staples and defendant Miller were out to take advantage of the insurance company. The trial court relied upon Evidence Code section 352 in granting defendant Miller's motion to exclude evidence of insurance, noting that the evidence would hurt plaintiff's case. Plaintiffs' motion for mistrial based upon this ruling was denied.

■ Under Evidence Code section 1155, evidence of a defendant's insurance is inadmissible to prove a defendant's negligence or other wrongdoing. Such evidence is regarded as both irrelevant and prejudicial to the defendant. (*Blake* v. *E. Thompson Petroleum Repair Co.* (1985) 170 Cal.App.3d 823, 830 [216 Cal.Rptr. 568]; *Neumann* v. *Bishop* (1976) 59 Cal.App.3d 451, 469 [130 Cal.Rptr. 786].) This principle is subject to the exception that "the exis-

tence of insurance may properly be referred to in a case if the evidence is otherwise admissible." (*Turner* v. *Mannon* (1965) 236 Cal.App.2d 134, 140 [45 Cal.Rptr. 831].) The trial court must then determine, pursuant to Evidence Code section 352, whether the probative value of evidence of insurance is substantially outweighed by its prejudicial effect. (*Blake* v. *E. Thompson Petroleum Repair Co., supra,* 170 Cal.App.3d at p. 831; *Garfield* v. *Russell* (1967) 251 Cal.App.2d 275, 279 [59 Cal.Rptr. 379].)

■ The trial court did not abuse its discretion under Evidence Code section 352 in excluding evidence of insurance coverage on behalf of defendant Miller. As the trial court pointed out, and as was obviously recognized by counsel for defendant Hoefke who also urged admission, it is difficult to understand how evidence of insurance coverage for defendant Miller would have aided plaintiffs in answering the claim of a collusive lawsuit. To the contrary, evidence that defendant Miller had insurance would bolster a claim of a collusive lawsuit between plaintiffs and Miller. Rather than ameliorating the argument of collusion, introduction of evidence of defendant Miller's insurance would have compounded the problem.

Balanced against this limited probative value is the prejudice inherent in admission of evidence of insurance coverage. (See *Garfield* v. *Russell, supra,* 251 Cal.App.2d at p. 279.) The trial court did not abuse its discretion in excluding evidence of defendant Miller's insurance coverage. (*Blake* v. *E. Thompson Petroleum Repair Co., supra,* 170 Cal.App.3d at p. 833.)

Plaintiffs make the illogical argument that the trial court should have bifurcated the trial to allow for admission of evidence of defendant Miller's insurance on the issue of liability. Bifurcation of liability and damage issues may be a viable option where liability can be litigated *without* reference to insurance; liability can there be determined without prejudicial mention of insurance. (*Ibid.*) But here plaintiffs want to bifurcate *to admit evidence of insurance on the issue of liability,* a procedure which would totally defeat the purpose of bifurcation. We reject the argument that bifurcation was required.

Appellant's reliance on *Brainard* v. *Cotner* (1976) 59 Cal.App.3d 790 [130 Cal.Rtpr. 915], is misplaced. In *Brainard,* a traffic accident case, the defendant told the plaintiff she had given the police a false explanation of the cause of the accident because she was fearful of her insurance. Applying the traditional rule that a *statement of fault* which includes reference to insurance should not have been excluded by the trial court under Evidence Code section 352, the court in *Brainard* reversed a judgment in favor of the defendant. (*Id.,* at pp. 795-796; see also *Menefee* v. *Williams* (1968) 259 Cal.App.2d 56, 61 [66 Cal.Rptr. 108].)

Unlike the situation in *Brainard,* the instant case did not involve any admission of fault with a mention of insurance. The relevance, if any, of defendant Miller's insurance coverage was to explain his relationship with the plaintiff Staples, an issue far less significant than an admission of fault. Under these circumstances, the trial court retained its traditional discretion under Evidence Code section 352 to preclude evidence of insurance coverage.

## VI

### The Court Properly Denied Examination on an Unverified Cross-complaint Filed on Behalf of Defendant Hoefke but Dismissed Before Trial

Plaintiffs argue the trial court committed error in refusing to allow evidence of a cross-complaint filed on behalf of defendant Hoefke against defendant Miller. The cross-complaint alleged that defendant Miller operated "drop hammer type equipment" which caused the building in question to vibrate and plaintiffs to commence this action. The unverified complaint was voluntarily dismissed on defendant Hoefke's motion only six weeks after it was filed.

The trial court ruled that examination on the cross-complaint would not be allowed. The court noted the cross-complaint was not verified, and examination would get into side issues such as whether Hoefke knew what particular words meant within the pleadings.

To the extent the court relied on the unverified nature of the cross-complaint as a basis for exclusion, the ruling was in error. It is presumed that even an unverified pleading is filed with the consent of the client and should be regarded as an admission. (*Cseri* v. *D'Amore* (1965) 232 Cal.App.2d 622, 627-628 [43 Cal.Rptr. 36]; *Dolinar* v. *Pedone* (1944) 63 Cal.App.2d 169, 176-177 [146 P.2d 237].)

However, where a pleading is superseded, the original pleading is not admissible as direct evidence to establish a fact but may be offered for impeachment. (*Meyer* v. *State Board of Equalization* (1954) 42 Cal.2d 376, 384-385 [267 P.2d 257]; *City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 418 [82 Cal.Rptr. 1].) Pursuant to this rule, the cross-complaint would have been admissible to impeach defendant Hoefke, although it had been dismissed.

If there were no other facts pertaining to this issue, exclusion of the cross-complaint would have been significant error. But at the same time the court prohibited use of the cross-complaint, it ruled admissible a letter from defendant Hoefke to defendant Miller containing the same essential allegation of fault.[4] The existence of this letter rendered examination on the cross-complaint cumulative. At that point, the court was entitled to consider the consumption of time involved in examining defendant Hoefke on a document he did not draft or sign. The court was well within its discretion in concluding that examination was cumulative and would consume an undue amount of time on side issues. (Evid. Code, § 352.)

## VII

NONSUIT WAS PROPERLY GRANTED AS TO
DEFENDANT MILLER FOR BREACH OF LEASE,
BUT ERRONEOUSLY GRANTED FOR THE TRESPASS
CAUSE OF ACTION AGAINST DEFENDANT HOEFKE

At the conclusion of plaintiffs' case, the trial court granted nonsuit motions as to one cause of action pertaining to each defendant. Defendant Miller's motion for nonsuit was granted as to the breach of lease cause of action, which alleged that Miller violated that portion of his lease prohibiting conduct which tends to disturb other tenants. As to defendant Hoefke, a nonsuit was granted on the trespass cause of action, leaving only a breach of lease cause of action.

Plaintiffs argue they were third party beneficiaries of defendant Miller's lease with defendant Hoefke as to the provision prohibiting Miller from disturbing any other tenant, and the case should have gone to the jury on that theory. Plaintiffs also contend defendant Hoefke was negligent in failing to put a restrictive clause in defendant Miller's lease prohibiting use of a punch press. Because a trespass may be committed by negligent conduct, plaintiffs reason there was sufficient evidence of trespass by defendant Hoefke to withstand a motion for nonsuit.

---

[4]The letter provided in part as follows:

"Dear Mr. Miller:

"This letter is to make you aware of the status of your lease of my building.

"As of October 31, 1979, your lease has expired and you are currently in the building without an extension of your lease. This situation is due to your machine and the lawsuit it has incurred. Your lease specified that you were only to do light manufacturing in the facility. Light manufacturing does not include the use of a machine that vibrates the concrete slab of the building.

"According to my attorney, even if an option had been agreed to, it would no longer be valid since your activity contrary to conditions of the lease have triggered a lawsuit."

Turning first to plaintiffs' claim they were third party beneficiaries of defendant Miller's lease, we conclude plaintiffs' position is not well taken. Under California law persons having enforceable rights under contracts to which they are not a party are classified as either creditor beneficiaries or donee beneficiaries. (*Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [113 Cal.Rptr. 585, 521 P.2d 841].) Persons who are only incidentally or remotely benefited may not enforce a contract. (*Ibid.*; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 590 [15 Cal.Rptr. 821, 364 P.2d 685]; Civ. Code, § 1559.)

A person is not a third party beneficiary unless the contract is *expressly* for the benefit of the third party. "For a third party to qualify as a beneficiary under a contract, the contracting parties must have intended to benefit that third party, and their intent must appear from the terms of the contract." (*Kirst* v. *Silva* (1980) 103 Cal.App.3d 759, 763 [163 Cal.Rptr. 230].) The fact that a contract, if carried out to its terms, would inure to the benefit of a third party, is not sufficient to enable him to demand its fulfillment. (*Ibid.*; *Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 33 [147 Cal.Rtpr. 655].)

Given these principles, we have no trouble concluding that plaintiffs were not third party beneficiaries of the Miller-Hoefke lease. There is no expression of intent in the lease to do anything but fix the respective rights and duties of a landlord and tenant. That one aspect of the lease called for defendant Miller not to disturb other tenants was not intended to confer any contractual right on behalf of plaintiffs. Whatever benefit plaintiffs may have derived from the Miller lease was incidental. Because plaintiffs were not third party beneficiaries of the Miller-Hoefke lease, the trial court properly granted a nonsuit on behalf of defendant Miller on the breach of lease cause of action.

■ Although the court correctly dismissed the breach of contract cause of action against defendant Miller, it was error to grant defendant Hoefke's nonsuit motion on the trespass cause of action. The court, as previously noted, allowed the case to go to the jury on a trespass cause of action against defendant Miller on the theory Miller's punch press was the cause of plaintiffs' cameras losing calibration. There is no question that plaintiffs' lease specifically prohibited defendant Hoefke from renting "the adjoining southerly unit" to another lessee operating a press such as that used by Miller.

There was adequate evidence offered by plaintiffs from which the jury could find the following facts: (1) defendant Hoefke was under a legal duty to prevent defendant Miller from operating a punch press; (2) defendant Hoefke negligently failed to take the steps necessary to prohibit Miller's operation of a punch press; and (3) defendant Hoefke's negligence resulted in defendant Miller operating a punch press emitting vibrations which consti-

tuted a trespass on plaintiffs' leasehold. In view of the very specific provision in plaintiffs' lease, there was a sufficient nexus between defendant Hoefke's allegedly negligent conduct and defendant Miller's alleged trespass to warrant letting the jury decide if defendant Hoefke was responsible for the trespass as a joint tortfeasor with Miller.

To establish that a defendant is a joint tortfeasor, it must be shown the defendant proceeded tortiously—with intent or negligence. (See *Orser* v. *George* (1967) 252 Cal.App.2d 660, 667 [60 Cal.Rptr. 708].) There was sufficient evidence of a connection between defendant Hoefke's conduct and defendant Miller's operation of the punch press that it cannot be said, as a matter of law, that there was no substantial evidence to support a finding that Hoefke was vicariously liable for Miller's alleged trespass. It was therefore error to grant the nonsuit as to defendant Hoefke on the trespass cause of action. (See *Hinkley* v. *La Mesa R. V. Center, Inc.* (1984) 158 Cal.App.3d 630, 636-637 [205 Cal.Rptr. 22].)

Having delivered the good news to plaintiff that nonsuit was erroneously granted as to defendant Hoefke, we now must also deliver the bad news: reversal is an idle act and does not necessarily compel retrial. It is manifest that the cornerstone of plaintiffs' trespass cause of action was proof that defendant Miller's punch press was the cause of plaintiffs' cameras losing columnation. No independent act of trespass was alleged or proved against defendant Hoefke. Liability, if any, on the part of defendant Hoefke, was necessarily vicarious.

The jury found, however, in favor of defendant Miller on the trespass cause of action. We affirm that judgment in this opinion. Accordingly, although plaintiffs were erroneously denied a jury trial by the nonsuit as to the trespass cause of action against defendant Hoefke, that very issue was fully litigated on the merits against plaintiffs, with an adverse verdict. Relitigation of the very same issue, against defendant Hoefke on a theory of vicarious liability, is barred by the doctrine of collateral estoppel. (*City of Los Angeles* v. *Superior Court* (1978) 85 Cal.App.3d 143, 154 [149 Cal.Rptr. 320].) The pertinent law is as follows: ". . . in actions of tort, if the defendant's responsibility is necessarily dependent upon the culpability of another who was the immediate actor, and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel, even though he would not have been bound by it had it been the other way." (*C.H. Duell* v. *Metro-Goldwyn-Mayer Corp.* (1932) 128 Cal.App. 376, 383 [17 P.2d 781].)

Accordingly, we reverse the judgment only to the extent defendant Hoefke's motion for nonsuit was granted on the trespass cause of action.

Upon remand to the trial court, defendant Hoefke may assert collateral estoppel by appropriate procedural motion in view of the jury's verdict in favor of defendant Miller, thereby barring retrial.

## VIII

### THE CONDITIONS AT THE TIME OF THE TESTS RUN BY THE DEFENSE EXPERT WERE SUFFICIENTLY SIMILAR TO CONDITIONS AT THE TIME OF THE ALLEGED TRESPASS TO SUPPORT ADMISSION OF THE EXPERT'S OPINION

Kelvin Merz, a defense expert witness, was allowed to testify as to experiments he conducted in 1982 on the vibrations omitted by defendant Miller's punch press. At the time of these experiments, the punch press had been moved from its 1979 location in the suite at 8575 Canoga Avenue to the suite at 8579 Canoga Avenue, the former location of plaintiffs' business. Because of the change in location of the punch press plaintiffs argue conditions in the experiment were so different from the time of the trespass that the experiments were inadmissible. Additionally, plaintiffs make a lengthy attack on the methodology used by Merz in reaching his conclusion.

 Experimental evidence is admissible where it (1) is relevant, (2) was obtained under conditions substantially similar to those to which it sought to be applied, and (3) will not cause undue delay in the trial or confusion for the jury. (*Culpepper* v. *Volkswagen of America, Inc.* (1973) 33 Cal.App.3d 510, 521 [109 Cal.Rptr. 110].) The proponent of the evidence need not show that conditions at the time of the experiment were identical to the conditions at the time in dispute; substantial similarity is all that is required. (*Id.,* at p. 521.) "Under § 352 of the Evidence Code, the trial judge has almost total discretion in admitting the results of demonstrations, experiments and tests, and his decision in this area will only be reversed when it is clearly abused." (*Id.,* at p. 522.)

The circumstances at the time of Merz' test in 1982 were unquestionably different than the conditions in 1977 to 1979. This was necessarily so, in that plaintiffs had moved out of 8579 Canoga Avenue and defendant Miller had moved into that suite. Nonetheless, there was evidence from which the trial judge could find conditions were sufficiently similar to allow Merz to express his opinion on the source of the problem with plaintiffs' camera.

Merz testified that because the building was symmetrical, it did not matter where in the building the punch press was located for purposes of this test. He also testified the passage of three years between 1979 and his test in 1982 did not impact on the validity of his work. This testimony provided substan-

tial evidence that Merz' tests were run under circumstances substantially similar to those at the time of the alleged trespass.

Plaintiffs' lengthy challenge to the methodology used by Merz is little more than an attempt to relitigate the factual merits of the case. The alleged deficiencies in Merz' testimony were matters properly submitted to the jury for its determination, and provide no basis for concluding the trial court abused its discretion in refusing to strike Merz' testimony. (Evid. Code, § 352; *Culpepper* v. *Volkswagen of America, Inc., supra,* 33 Cal.App.3d at p. 522.)

## IX-XI*

. . . . . . . . . . . . . . . . . . . . . . .

## XII

### THE ORDER FOR SANCTIONS FOR FILING A FRIVOLOUS COST BILL MUST BE REVERSED DUE TO A FAILURE TO RECITE IN DETAIL THE CIRCUMSTANCES JUSTIFYING THE ORDER

In addition to the causes of action for trespass and breach of lease, plaintiffs also sought a declaratory judgment on the issue of what plaintiffs' rent should have been after plaintiffs exercised an option to renew the lease. This issue was never contested during the jury trial, the matter having been conceded in plaintiffs' favor by defendant Hoefke. After the jury verdicts in favor of defendants on the contested causes of action, the court entered judgment in favor of plaintiffs on the declaratory relief cause of action.

The trial court had awarded attorney fees and costs to defendant Hoefke before rendering a judgment in favor of plaintiffs on the declaratory relief claim. Counsel for plaintiffs asked if the court would consider a cost bill since plaintiffs had now prevailed on the cause of action for declaration judgment. The court said the issue was not before the court at that time and no determination could be made "one way or the other on that."

Counsel for plaintiffs then filed a cost bill seeking full costs for the entire suit in the amount of $78,863.56, including $68,699.25 for attorney fees. Defendants Miller and Hoefke responded by filing motions to strike plaintiffs' cost bill and for sanctions. The court granted defendants' motions to strike plaintiffs' cost bill in its entirety. The written order of the court imposing sanctions provided as follows: "Court having taken the matter

---

*See footnote, *ante*, page 1397.

under submission earlier this date, now announces its decision as follows: Defendant Hoefke awarded $500.00 expenses and Defendant Miller awarded $300.00 expenses, pursuant to Code of Civil procedure [*sic*] 128.5, for filing frivolous cost bill requiring defendants and each of them to file the within motion to STRIKE."

Plaintiffs' contention that the court "invited" counsel to file the cost bill when declaratory relief was granted is without merit. The court did nothing more than indicate no cost bill was before the court at that time and properly refused to express any opinion on the subject.

■ Under the circumstances, the trial court properly determined the cost bill was frivolous. A motion is frivolous and in bad faith where any reasonable attorney would agree such motion is totally devoid of merit. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650 [183 Cal.Rptr. 508, 646 P.2d 179]; *M. E. Gray Co.* v. *Gray* (1985) 163 Cal.App.3d 1025, 1034 [210 Cal.Rptr. 285].) Plaintiffs' cost bill included a request for *all* costs incurred in the suit, without any attempt to limit costs to those relating to the uncontested declaratory relief cause of action. Plaintiffs' request for all costs based upon a favorable judgment of declaratory relief on one uncontested cause of action, where plaintiffs lost a four-week long jury trial on the disputed issues of trespass and breach of lease, was a motion totally devoid of merit.

While the trial court did properly find plaintiffs' cost bill to be frivolous, the written order imposing sanctions suffers from two defects. ■ In order to satisfy due process an "order imposing expenses shall be in writing and shall recite in detail the conduct and circumstances justifying the order." (Code Civ. Proc., § 128.5, subd. (c).) An order which merely recites that a particular action was "frivolous" and thereby has imposed sanctions is insufficient. (*Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1029 [215 Cal.Rptr. 708].)

The order imposing sanctions in the instant case contains no detailed recitation of the facts justifying sanctions. The order is bereft of any factual recital of the circumstances causing the court to impose sanctions. Reversal is therefore required. (*Ibid.*)

The second defect in the order is that sanctions were awarded against plaintiffs *and* counsel for plaintiffs in favor of both defendants. The written request for sanctions filed by defendant Miller did ask for sanctions against plaintiffs and counsel; defendant Hoefke's written request asked only for sanctions against plaintiffs. The absence of a written request for sanctions

against plaintiffs' counsel requires reversal of the order imposing sanctions on counsel in favor of defendant Hoefke.

Sanctions may not be imposed on the motion of counsel "except on notice contained in a party's moving or responding papers." (Code Civ. Proc., § 128.5, subd. (c).) Just as the order imposing sanctions requires a writing in detail in order to fulfill due process, it must also be a requirement of due process that one against whom sanctions are sought is entitled to actual notice of his potential liability. (*Corralejo* v. *Quiroga* (1984) 152 Cal.App.3d 871, 873-874 [199 Cal.Rptr. 733].) The absence of notice by defendant Hoefke to counsel for plaintiffs that sanctions were sought against counsel personally compels reversal of the order. (*Ibid.*)

The cause is remanded to the trial court, which may either make findings in a manner consistent with this opinion, or vacate its order of sanctions. (*Fegles* v. *Kraft* (1985) 168 Cal.App.3d 812, 817 [214 Cal.Rptr. 380].)

### Disposition

The order granting sanctions for filing a frivolous cost bill and the order granting defendant Hoefke's motion for nonsuit on the trespass cause of action are reversed and remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgments and orders are affirmed.

Each party to bear their own costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied March 30, 1987, and appellants' petition for review by the Supreme Court was denied May 20, 1987.