Filed 11/18/20  Katsouridis v. JPMorgan Chase Bank, N.A. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMES KATSOURIDIS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Defendant and Respondent. | B300458 <br><br> (Los Angeles County Super. Ct. No. BC649815) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Peter J. Mirich, Judge.  Affirmed.

The Appellate Law Firm, Berangere Allen-Blaine; Law Offices of Corey Evan Parker and Corey Evan Parker for Plaintiff and Appellant.

Dunbar & Associates, Kevin T. Dunbar, Matt D. Derossi, and Celina N. Price for Defendant and Respondent.

————————————————

Appellant James Katsouridis (Katsouridis) brought a negligence action against respondent JPMorgan Chase Bank, N.A. (Chase), seeking damages for injuries he allegedly sustained at one of its branch locations. The case was tried before a jury, which returned a defense verdict. The trial court thereafter entered judgment in favor of Chase and against Katsouridis.

On appeal, Katsouridis claims that the trial court "made a series of [evidentiary] errors which, in their totality, denied [him] a fair trial." Specifically, Katsouridis contends the trial court erroneously permitted Chase to refer to his original, unverified, and superseded complaint; should not have excluded his accident reconstruction expert; and erred in denying his motion to exclude one of Chase's expert witnesses. We conclude the trial court did not abuse its discretion by allowing Chase to impeach Katsouridis with the original complaint, determining that Katsouridis's expert could not offer testimony that would have been helpful to the jury, and tacitly finding that Chase properly designated its expert as a witness prior to trial. We thus affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 9, 2017, Katsouridis, through his attorney, filed an unverified complaint for damages, alleging causes of action for negligence and strict liability against Chase.[1] Katsouridis alleged that on March 6, 2015, he visited one of Chase's branch locations in Redondo Beach. Katsouridis asserted that he leaned against a work station and, "[w]ithout warning[,]

---

[1] On July 11, 2017, the trial court struck Katsouridis's cause of action for strict liability pursuant to the parties' stipulation.

the work station . . . came partially off the floor and began to rock back and forth causing [Katsouridis] to lose his balance and violently fall to the ground." Katsouridis sought general and special damages arising from this incident.

On February 20, 2019, Katsouridis, through new counsel, filed an unverified first amended complaint that reasserted his negligence cause of action. The pleading omitted the allegation that Katsouridis fell to the ground during the incident, and instead averred that, "[w]ithout warning[,] the workstation that [Katsouridis] was leaning against moved backward causing [him] to lose his balance and slip backward."

Prior to trial, Katsouridis moved for an order barring Chase from mentioning the original complaint, and for a ruling preventing a defense medical expert, Dr. Kendall Wagner, from testifying at trial because Chase purportedly failed to designate him properly as an expert. In turn, Chase moved to preclude Katsouridis's accident reconstruction expert, Richard Mumper, on the ground that he had repeatedly failed to appear for a pretrial deposition.

The trial court denied Katsouridis's motion to preclude Chase from mentioning the original complaint, reasoning that, "[i]f [Katsouridis] testifies," the allegations of the prior pleading "are admissible in terms of impeaching [him]." The trial court also denied Katsouridis's motion to exclude Dr. Wagner, but did not explain its reasoning for doing so.

The trial court initially deferred ruling on Chase's motion to exclude Mumper's testimony in order to allow the parties to arrange for his deposition before he would be called to the witness stand. After defense counsel showed the trial court

3

surveillance video of the incident,[2] however, the court decided to bar Mumper from testifying because it "question[ed] . . . whether [the] expert [would] be able to really provide testimony that is sufficiently beyond common and ordinary experience and knowledge such that [his] testimony would be helpful to the trier of fact."[3]  In rendering this decision, the court also suggested that exclusion was proper because the court had found, based on the parties' representations, that Mumper had elected to conduct a site inspection in a different matter rather than appear for a belated deposition while the trial was in recess.

The case proceeded to trial on July 15, 2019.  On July 19, 2019, the jury returned a special verdict in which it found that Chase was not "negligent in the use or maintenance of [its] property."  Accordingly, the trial court entered judgment in favor of Chase and against Katsouridis.  Katsouridis timely appealed the judgment.

## DISCUSSION

Katsouridis challenges three of the trial court's evidentiary rulings:  (1) the denial of Katsouridis's motion to preclude defense counsel from referring to the original complaint; (2) the exclusion

---

[2] In its brief, Chase states that an excerpt of the video was shown to the jury at trial, a fact that Katsouridis does not dispute in his reply brief.  (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 (*Rudick*) [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point."].)

[3] The trial court conditioned its ruling excluding Mumper's testimony on Chase's agreement not to call its accident reconstruction expert to testify at trial; Chase's counsel acceded to that condition.

4

of Mumper's testimony; and (3) the denial of Katsouridis's motion to exclude Dr. Wagner from trial. To prevail on these claims of error, Katsouridis must demonstrate that the trial court abused its discretion in rendering these decisions. (See *Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 606 ["We 'review the trial court's evidentiary rulings for an abuse of discretion.' "]; *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 187 ["A court abuses its discretion if its ruling is ' "so irrational or arbitrary that no reasonable person could agree with it." ' [Citation.] A court's discretion also is limited by the applicable principles of law."]; *Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 787 [" ' "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' "].) For the reasons discussed below, we conclude that Katsouridis has failed to demonstrate that the trial court's evidentiary rulings were so irrational or arbitrary that no reasonable person could agree with them.

## A. The Trial Court Did Not Abuse Its Discretion in Allowing Chase to Impeach Katsouridis with the Original Complaint

Katsouridis argues that the trial court abused its discretion in permitting Chase to impeach Katsouridis with his original complaint because "there is no evidence to support the concept that Mr. Katsouridis either read *or* adopted the pleading." Katsouridis notes that the original complaint was filed by his first trial counsel, whom Katsouridis later replaced. Katsouridis also points out that when defense counsel asked him at trial about the original complaint's allegation that he fell to the

5

ground during the incident, Katsouridis responded, "I never saw that. I didn't write that."

Katsouridis's argument that he could not be impeached with his prior unverified pleading is unavailing. "[W]here a pleading is superseded, the original pleading is not admissible as direct evidence to establish a fact but may be offered for impeachment." (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1412.) Further, "[i]t is presumed that even an unverified pleading is filed with the consent of the client . . . ." (See *ibid.*; see also *id.* at pp. 1412–1413 [concluding that although the trial court erred in barring plaintiff from offering an unverified cross-complaint to impeach defendant, the error was harmless under the facts of that case].) Indeed, it is well established that an attorney's statements are generally imputed to his or her client. (See 7 Cal.Jur.3d (2019) Attorneys at Law, § 204, fn. omitted ["The relationship of attorney and client is one of agent and principal, and thus is governed by the rules applicable to the relationship of principal and agent, generally."]; *id.*, § 216, fn. omitted ["In accordance with the attorney's exclusive authority concerning the conduct of proceedings on behalf of a client, the client is normally bound by the attorney's mistakes."].)

Katsouridis does not cite any authority establishing that he may circumvent this rule by terminating the attorney who filed the original complaint and offering self-serving testimony that he never personally read or adopted the original complaint.[4]

---

[4] Katsouridis contends that *Pleasant Hill v. First Baptist Church* (1969) 1 Cal.App.3d 384, "called into question" the rule that a party's prior unverified complaint may be used to impeach that party. *Pleasant Hill* did not cast doubt on the rule that, " 'where [a] party has testified in the action, a superseded

6

Nor does he claim that his attorney lacked the authority to commence the instant action by filing the original complaint on his behalf.[5]  (See also 7 Cal.Jur.3d, *supra*, Attorneys at Law, § 213, fns. omitted ["In the absence of proof to the contrary, it is presumed that a licensed attorney appearing in litigation as a representative of a party has the authority to appear for that party and do all acts necessarily incidental to the proper conduct of the case."].)

Katsouridis, moreover, does not dispute Chase's assertion that he stated in verified interrogatory responses that he fell to the ground during the incident, an admission that further undermines Katsouridis's assertion he did not adopt a nearly identical allegation included in the original complaint.  (See *Rudick*, *supra*, 41 Cal.App.5th at pp. 89–90.)

---

pleading may be offered for the purpose of impeachment. . . .' " (See *id.* at pp. 417–419.)  Rather, *Pleasant Hill* opined that barring a party from offering such a pleading " 'as direct evidence to establish a fact in issue' " would "not represent prevailing authority."  (See *id.* at pp. 418–419.)

[5]  In fact, Katsouridis's opening brief suggests that he intended to allege in the original complaint that he fell to the ground.  Specifically, Katsouridis contends, "Upon receipt of discovery, including the surveillance video provided by the Defense, Mr. Katsouridis realized that his memory was inaccurate and that he did not, *in fact*, fall, but did lose his balance when the check writing desk moved.  He, therefore, filed an amended complaint on February 20, 2019."  (See also *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

In sum, Katsouridis fails to establish that the trial court abused its discretion in permitting Chase to impeach him with the original complaint.

## B. The Trial Court Did Not Abuse Its Discretion in Excluding Mumper's Testimony

Katsouridis contends that "the trial court, having viewed the video of the incident, decided that the accident reconstruction evidence was unnecessary and made the independent, tactical decision to exclude [Mumper's] testimony." Katsouridis contends that, "[b]y basing its decision on its own view of the evidence already before it, the trial court stopped being a neutral arbiter and, instead, entered the province of plaintiff's counsel."

Katsouridis's characterization of the trial court's decision is unavailing. Fairly construed, the trial court's ruling excluding Mumper reveals the court did not usurp counsel's prerogative, but instead found that, in light of the video of the incident, the accident reconstruction expert's testimony would not assist the trier of fact. In barring Katsouridis's expert witness from testifying at trial, the trial court stated it was "questioning[,] . . . whether . . . [Katsouridis's accident reconstruction] expert will be able to really provide testimony that is sufficiently beyond common and ordinary experience and knowledge such that their testimony would be helpful to the trier of fact." The trial court opined that the jury "should be able to make" its decision "by taking a look at the video."

" ' "The decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of the inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is

8

sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." [Citations.]' [Citation.]" (*People v. Brown* (2001) 96 Cal.App.4th Supp. 1, 36 (*Brown*); Evid. Code, § 801, subd. (a) ["If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact[.]"].) The trial court's statements indicate it found that Mumper's testimony would not assist the jury and therefore was inadmissible expert opinion.

Katsouridis does not explain why the trial court erred in deciding that an accident reconstructionist would not aid the jury given the existence of the video of the incident. (See *Brown*, *supra*, 96 Cal.App.4th Supp. at p. 36.) Indeed, Katsouridis did not even include a copy of the video in the appellate record, let alone argue why even though it had the video, the jury nonetheless needed the assistance of an accident reconstructionist. Further, because the record reveals at least one permissible basis for the trial court's ruling, we need not reach Chase's argument that Mumper was properly excluded as a sanction for Katsouridis's failure to produce him for a deposition. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 ["[I]f a judgment is correct on any theory, the appellate court will affirm it . . . ."].)

## C. The Trial Court Did Not Abuse Its Discretion in Denying Katsouridis's Motion to Exclude Dr. Wagner's Testimony

Katsouridis contends that Chase did not properly designate Dr. Wagner as an expert because, "[r]ather than providing . . . counsel with a pleading, and appending

9

Dr. Wagner's curriculum vitae, as is required, defense counsel simply added him to the witness list with no additional information." In particular, Katsouridis contends that he "received none of the[ ] things" that Chase was required to disclose pursuant to Code of Civil Procedure section 2034.260, subdivision (c). He further claims that, "[b]y ruling that Dr. Wagner could testify without both proper disclosure under the Code of Civil Procedure and a pretrial deposition, the court abused its discretion and Mr. Katsouridis was unfairly prejudiced."

Code of Civil Procedure section 2034.210 provides in pertinent part: "After the setting of the initial trial date for the action, any party may obtain discovery by demanding that all parties simultaneously exchange information concerning each other's expert trial witnesses to the following extent: . . . [¶] . . . If any expert designated by a party . . . is a party or an employee of a party, or has been retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action, the designation of that witness shall include or be accompanied by an expert witness declaration under Section 2034.260." (See Code Civ. Proc., § 2034.210, subd. (b); see also *id.*, subd. (c).)

In turn, Code of Civil Procedure section 2034.260, subdivision (c) provides that the aforementioned expert witness declaration shall be "signed only by the attorney for the party designating the expert" and "contain all of the following: [¶] (1) A brief narrative statement of the qualifications of each expert. [¶] (2) A brief narrative statement of the general substance of the testimony that the expert is expected to give. [¶] (3) A representation that the expert has agreed to testify at the trial.

10

[¶]  (4) A representation that the expert will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including an opinion and its basis, that the expert is expected to give at trial.  [¶]  (5) A statement of the expert's hourly and daily fee for providing deposition testimony and for consulting with the retaining attorney."  (See Code Civ. Proc., § 2034.260, subd. (c).)  Further, subdivision (b)(1) provides that an "exchange of expert witness information" must include "[a] list setting forth the name and address of a person whose expert opinion that party expects to offer in evidence at the trial."  (See *id.*, § 2034.260, subd. (b)(1).)

Chase states that more than three months before the trial, it served upon Katsouridis a designation of expert witnesses that identified Dr. Wagner, along with an expert witness declaration concerning that witness.  The record confirms that in connection with its opposition to Katsouridis's motion in limine, Chase's counsel submitted a declaration that authenticated the expert witness designation and stated that the designation was served on Katsouridis on April 1, 2019.

The expert witness designation identified Dr. Wagner as one of Chase's retained expert witnesses and provided an address for this witness.  Attached to the designation was an expert witness declaration executed by Chase's counsel, which provided in pertinent part:  "Dr. Wagner's medical specialty is orthopedic surgery"; "Dr. Wagner will testify at trial as to the nature and extent of [Katsouridis's] physical injuries, treatment, causation of injury and complaints, future care, the reasonableness and the necessity of the treatment and the reasonableness of the medical charges from an orthopedic perspective"; and "Dr. Wagner will be familiar enough with the case to give a meaningful deposition at

11

the rate of $1,00.00 [*sic*] per hour if held in his office[;] Dr. Wagner's deposition rate if held outside of his office or if videotaped is $1,200.00 per hour." Furthermore, attached to the designation and the declaration was a proof of service indicating that they were served on Katsouridis's counsel on April 1, 2019.

Katsouridis does not explain why, notwithstanding this evidence in the record, the trial court should have found that Chase failed to designate Dr. Wagner properly as an expert witness. Further, Katsouridis does not cite any authority for the proposition that defense counsel had to provide Dr. Wagner's curriculum vitae, and we observe that no such disclosure is required by Code of Civil Procedure section 2034.260. (See Code Civ. Proc., § 2034.260, subds. (a)–(c).)

Admittedly, Katsouridis did not depose Dr. Wagner. Yet, in his reply brief, Katsouridis does not dispute Chase's assertion that Katsouridis never sought to depose Dr. Wagner, meaning that he "implicitly concede[s]" this point. (See *Rudick, supra*, 41 Cal.App.5th at pp. 89–90.) Nor does he claim that Chase was obligated, sua sponte, to produce Dr. Wagner for a deposition.

For these reasons, we conclude that Katsouridis failed to discharge his burden of showing that the trial court abused its discretion in denying his motion to exclude Dr. Wagner from testifying at trial.

## DISPOSITION

The judgment is affirmed.  JPMorgan Chase Bank, N.A. is awarded its costs on appeal.

NOT TO BE PUBLISHED.


                                        BENDIX, Acting P. J.

We concur:



        CHANEY, J.



        FEDERMAN, J.*

---

        *  Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.