Filed 9/1/15  Rice v. Rancho Palma Grande HOA CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT S. RICE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>RANCHO PALMA GRANDE HOMEOWNERS ASSOCIATION,<br><br>Defendant and Appellant. | H038763<br>(Santa Clara County<br>Super. Ct. No. 1-11-CV203558) |

Plaintiff and appellant Robert S. Rice sued defendant Rancho Palma Grande Homeowners Association (the Association), claiming the Association's practice of charging plaintiff two assessments each month for his single condominium within the Association's development violated the Association's covenants, conditions, and restrictions (CC&R's) as well as the Davis-Stirling Common Interest Development Act (Davis-Stirling Act).  (Civ. Code, § 4000 et seq.)[1]  After a bench trial, the trial court entered an amended judgment denying plaintiff's claims, awarding the Association attorney's fees and costs for its work on the litigation phase of the case, but denying the Association attorney's fees and costs associated with pre-litigation work.  The Association filed a cross-appeal, arguing that the trial court erred by denying pre-litigation attorney's fees.

---

[1] Unspecified statutory references are to the Civil Code.  The Davis-Stirling Act was reorganized and recodified from Civil Code section 1350, et seq. to section 4000, et seq., effective January 1, 2014.  (Stats. 2012, ch. 180, §§ 1-3, pp. 2840-2903.)

On appeal, plaintiff renews his claim that he should be charged one assessment each month and the Association argues that it is entitled to attorney's fees for its pre-litigation work as well as for work related to the instant appeal. After concluding that the trial court properly denied plaintiff's claim for relief, we will reverse the amended judgment and remand for the trial court to determine reasonable attorney's fees and costs to the Association for its pre-litigation work and its work on appeal.

## I.    TRIAL COURT PROCEEDINGS

The following information is based on testimony and documentary evidence admitted during the April 2012 bench trial as well as a list of stipulated facts filed in March 2012.

In late 1981, a developer recorded a condominium plan (Original Plan) and a set of CC&R's with the County of Santa Clara Recorder's Office to develop 111 condominium residences on six lots in the City of Santa Clara (City). Section 1(b) of the CC&R's states: " 'Unit' shall mean the elements of a Condominium which are not owned in common with the Owners of other Condominiums. Each Unit is a numbered parcel as shown on the Plan. The boundary lines of each Unit are as defined under California Civil Code Section 1353 (a)." Section 13(a) of the CC&R's contains requirements for the payment of regular assessments by residents and mandates that they "shall be assessed equally to the Owners of each Unit."

Under the Original Plan, each of the 111 proposed residences was separately designated with a unit number and plaintiff's single condominium was depicted as two adjacent but separate residences, labeled "Unit 43" and "Unit 44." According to the recorded Declaration of Reciprocal Covenants and Easements, Units 43 and 44 were two of 18 units planned for Lot 5 of the development. In June 1984, a modification to the Original Plan was recorded (Modified Plan), with an instrument number of 8099441. The Modified Plan removed the dividing walls between Unit 43 and Unit 44. Despite the removal of the walls, the Modified Plan still contains both "Unit 43" and "Unit 44" labels

2

inside the single condo, and is referred to on one page as "Unit 43-44." The single condominium spanning what had been separate Unit 43 and Unit 44 in the Original Plan was apparently custom designed by E. Jackson Going and Audrey B. Going (the Goings), the first owners of that condo. The condominium designed by the Goings is approximately 2800 square feet while the other condos in the complex range from 1226 to 1708 square feet.

The cover page of the Modified Plan has a series of Notes and Definitions, two of which are relevant. Note two states, in relevant part: "The property is hereby divided into separate freehold estates and each of the units as separately shown, numbered and designated in the herein condominium plan consists of the space bounded by and contained within the interior unfinished surfaces of the perimeter walls, floors, ceilings, windows, and doors of each unit. Each of such spaces being defined and referred to herein as a unit." Note seven states: " 'Unit' shall mean the elements of a condominium which are not owned in common with the owners of other condominiums in the project. Each unit is a numbered parcel, and individual residence, and is composed of one (1) air space as shown, numbered and designated in the herein condominium plan."

A Declaration of Annexation, recorded contemporaneously with, and referring to, the Modified Plan contained sample grant deeds for the various condominium lots and was filed as instrument number 8132499. The sample grant deed for Lot 5 grants three "parcels." Parcel one consists of the exclusive use of one of the 18 numbered units on the lot, parcel two provides a 1/18th interest in the common areas of Lot 5, and parcel three grants the exclusive use of the yard and garage associated with the unit granted in parcel one.

The Goings received two grant deeds in July 1984 for their condominium that were based on the sample grant deed attached to the Declaration of Annexation, one for Unit 43 and the other for Unit 44. Each grant deed provided a 1/18th interest in the common areas of Lot 5, for a total of a 2/18th interest. Parcel one of each deed refers to

3

"the Modification of the Condominium Plan" but does not specify the instrument number for that plan. During the entire time they owned the condo, the Goings paid two monthly assessments each month.

In 1994, the Goings sold the condominium to Glen A. Bollenbacher. The property transferred via one instead of two grant deeds. The deed was still largely based on the original sample deed except that parcel one conveyed "Units 43 and 44" and parcel two conveyed a "2/18th's interest" in the Lot 5 common areas. Parcel one refers to a condominium plan with instrument number 8132499 (which is actually the instrument number of the Declaration of Annexation). During his ownership of the condo, Bollenbacher paid two assessments per month to the Association.

In 2004, Bollenbacher listed the condominium for sale. Plaintiff, as a prospective buyer, was told by a sales agent that the condominium required the payment of two assessments each month. Plaintiff asked the Association about the double assessment, which responded by letter in August 2004 that the condo-referred to as 2009/2019 Elm Leaf Court-"is a single unit … that was constructed by the developer on two parcels during original construction." The letter continued that the "unit carries two assessments, one assessment per parcel." To verify that the condominium was lawfully constructed, plaintiff also inquired with the City and received a memorandum in August 2004 verifying that the condominium was "inspected and accepted as one unit in 1985." Plaintiff obtained a title report for the condominium before buying it, which stated that Bollenbacher was the fee simple owner of "Units 43 and 44" as shown in the Modified Plan and that he had a "2/18th interest" in the common areas of Lot 5. Though the title report correctly referenced the Modified Plan in the written description, it included a map from the Original Plan, which depicted Units 43 and 44 as separate residences.

Plaintiff bought the condominium from Bollenbacher in August 2004, which was conveyed by a single grant deed. Like Bollenbacher's deed from the Goings, parcel one

4

conveyed "Units 43 and 44" and parcel two conveyed a "2/18th interest" in the common areas of Lot 5. The deed refers to the units "as shown" in the Modified Plan.

From August 2004 until 2009, plaintiff received two assessment invoices per month, one addressed to 2009 Elm Leaf Court and one addressed to 2019 Elm Leaf Court. Because only 2019 Elm Leaf Court is a recognized United States Postal Service address, both invoices were actually delivered to that address. Plaintiff always paid both assessments. In addition to paying two assessments, plaintiff was allowed two votes regarding Association matters.

According to plaintiff's complaint, in Fall 2009 plaintiff discovered the existence of the Modified Plan. Once he obtained the Modified Plan plaintiff contacted the City again regarding the status of his condo. The City's Director of Planning and Inspection responded via letter, verifying that "the City recognizes a total of 110 townhome units" in the Association development and "recogniz[ing] units 43 and 44 as one unit located at 2019 Elm Leaf Court." The letter noted that the Original Plan called for 111 units but the "combination of 2009 and 2019 Elm Leaf Court … results in a total unit count … of 110 townhome units." In line with this letter, the City adjusted a Certificate of Occupancy for the building containing plaintiff's condominium to remove the reference to 2009 Elm Leaf Court and noted on the certificate "2009 and 2019 were combined to create a single unit … ."

Plaintiff took this information to the Association's Board of Directors (Board), of which he was a member, and requested that the Association charge him only one assessment per month because he owned only one unit. The Board refused to charge him only one assessment. The parties engaged in alternative dispute resolution as called for by former section 1369.540 but were unable to reach a settlement.

In June 2011, plaintiff filed a complaint against the Association, alleging causes of action for quiet title, declaratory judgment, and a permanent injunction. Plaintiff sought a declaration that his condominium constituted "one single condominium Unit" for all

5

purposes and enjoining the Association from assessing his unit "as two Units for any regular assessments or special assessments … ." Plaintiff also requested "attorney's fees according to proof."

The parties agreed to a bench trial, which occurred in April 2012. The court issued a statement of decision in July 2012 denying plaintiff's claims for relief. In its statement of decision, the trial court found the meaning of the term "unit" as used in the CC&R's and the Modified Plan ambiguous because plaintiff's condominium arguably occupies two numbered parcels but also only contains a single airspace. To resolve that ambiguity, the court relied on the following extrinsic evidence to conclude that plaintiff's condominium was two units for Association assessment purposes: (1) the Goings received two deeds for the condo; (2) the Goings received a 2/18th interest in the common area of Lot 5; (3) the Declaration of Annexation, which was recorded after the Modified Plan, refers to 111 rather than 110 units and provides a 1/18th interest in the common area of Lot 5 rather than a 1/17th interest; and (4) the condominium has consistently been assessed two assessments per month, and all owners of the condominium have consistently paid that double assessment.

The Association subsequently filed a memorandum of costs and a motion requesting attorney's fees as a prevailing party under former section 1354, subdivision (c) of the Davis-Stirling Act. Plaintiff opposed the motion, arguing that the Association could not recover attorney's fees for work performed before plaintiff filed suit and that the Association was legally foreclosed from recovering *any* attorney's fees because the fees were borne by the Association's insurance company. After a hearing, the court awarded the Association its fees incurred after plaintiff filed suit but denied the Association's request for pre-litigation fees, finding they were unrecoverable as a matter of law. The court entered an amended judgment and plaintiff and the Association timely appealed.

6

## II. DISCUSSION

On appeal, plaintiff argues that he should be responsible for one monthly assessment because his condominium constitutes only one unit and that, even if the trial court correctly found in the Association's favor, the trial court erred in awarding the Association attorney's fees because its fees were paid by the Association's insurer. On cross-appeal, the Association claims the trial court impermissibly denied the Association's request for pre-litigation attorney's fees. The Association also requests attorney's fees for its appellate work.

### A. DEFINITION OF "UNIT" FOR ASSESSMENT PURPOSES

Plaintiff claims the trial court erred in finding that his condominium constituted two units for purposes of the assessment of monthly dues because, according to plaintiff, there is no ambiguity in the definitions of "unit" contained in the CC&R's and the Modified Plan.

#### 1. Standard of Review

The parties disagree regarding the applicable standard of review, with plaintiff claiming the standard is "clearly de novo" and the Association maintaining that the standard is substantial evidence. CC&R's and other governing documents are interpreted based on contract principles. (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 380-381 (*Nahrstedt*).) We interpret contracts "to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (§ 1636.) "When the meaning of the contract language may be determined without the aid of extrinsic evidence, we generally apply a de novo standard of review to the construction of the instrument." (*Tin Tin Corp. v. Pacific Rim Park, LLC* (2009) 170 Cal.App.4th 1220, 1225.) The threshold determination of whether contract language is clear is a question of law that we review de novo. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 847 (*Benach*).)

7

If a contract term is "susceptible of two or more reasonable constructions," it is ambiguous and "a party is entitled to introduce extrinsic evidence to aid the interpretation of the contract." (*Benach, supra,* 149 Cal.App.4th at p. 847.) Further, where "interpretation of a contract turns on the credibility of conflicting extrinsic evidence, the trier of fact must determine the meaning of language in the contract" and that determination is reviewed on appeal for substantial evidence. (*Ibid.*) Thus, we review de novo whether the definition of "unit" in the Association's governing documents is ambiguous. Because, as discussed next, we find that definition ambiguous, we review the trial court's determination that plaintiff owns two units for assessment purposes for substantial evidence.

### 2. The CC&R's and Modified Plan Definitions of "Unit" Are Ambiguous

The trial court found the definition of "unit" in the CC&R's and the Modified Plan ambiguous. Section 1(b) of the CC&R's states that a unit "is a numbered parcel as shown on the Plan" and incorporates by reference former Civil Code section 1353, subdivision (a) to define the "boundary lines of each Unit." When the CC&R's were recorded in 1981, former section 1353, subdivision (a) defined the boundaries of a condominium unit as "the interior surfaces of the perimeter walls, floors, ceilings, windows and doors thereof, and the unit includes both the portions of the building so described and the airspace so encompassed." (Former § 1353, subd. (a), Stats. 1963 ch. 860, § 1, p. 2092, repealed by Stats. 1985, ch. 874, § 14, p. 2777.) Introductory note seven to the Modified Plan similarly states that "[e]ach unit is a numbered parcel, and individual residence, and is composed of one (1) air space as shown, numbered and designated in the herein condominium plan."

We find the foregoing definitions of "unit" ambiguous. Consistent with the definition of "unit" in introductory note seven to the Modified Plan, plaintiff's condominium is an "individual residence" that contains only one "air space," supporting plaintiff's theory that he owns a single unit. However, both section 1(b) of the CC&R's

8

and introductory note seven to the Modified Plan also state that "[e]ach unit is a numbered parcel ... ." The area where plaintiff's condominium was constructed is labeled on the Modified Plan as "Unit 43 and Unit 44." The Modified Plan's use of two numbers to describe plaintiff's condominium supports the Association's theory that plaintiff owns two units for purposes of assessments under section 13(a) of the CC&R's. Because the term "unit" is reasonably susceptible of either of these constructions, the documents are ambiguous and the trial court properly looked to extrinsic evidence to determine the term's meaning. (*Benach, supra,* 149 Cal.App.4th at p. 847.)

### 3. The Trial Court's Interpretation is Supported by Substantial Evidence

Having found the definitions of "unit" ambiguous, we must determine whether substantial evidence supports the trial court's decision that plaintiff's condominium encompasses two units for assessment purposes. (*Benach, supra,* 149 Cal.App.4th at p. 847.) As the trial court noted, to interpret an ambiguous term in the Association's governing documents "we take account of and attempt to give effect to the likely intentions of the creators at the time the instrument was written, as well as the circumstances under which it was made and the subject matters that it treats. We may also properly take account of the acts and conduct of the parties after the contract is executed, as effectively a practical construction of the instrument by those directly affected." (*Starlight Ridge South Homeowners Assn. v. Hunter-Bloor* (2009) 177 Cal.App.4th 440, 448.)

The trial court's interpretation of "unit" is supported by substantial evidence. Essentially all extrinsic evidence in the record that was created contemporaneous to the date the Modified Plan was recorded supports the trial court's decision. The Declaration of Annexation, recorded in June 1984 and referencing the Modified Plan, refers to 111 units. If plaintiff's condominium constituted only one unit, the document would have only referenced 110 units. Similarly, the sample deed for Lot 5, attached to the Declaration of Annexation, provides each unit owner with a 1/18th interest in the

9

common areas of Lot 5. Had the developer intended plaintiff's condominium to be one unit, the sample deed would have granted a 1/17th interest in the common areas because there are only 17 residences on Lot 5. In July 1984 when they took title to the condo, the Goings received two grant deeds, one for each unit making up their condo, and received a total of a 2/18th interest in the common areas of Lot 5. Though the condominium was conveyed from the Goings to Bollenbacher and from Bollenbacher to plaintiff via a single grant deed, each of those deeds still referenced two units as well as a "2/18th interest" in the common areas of Lot 5. Finally, every owner of the condo, including plaintiff, has consistently paid two assessments each month and the Association disclosed to plaintiff before he purchased the condominium that it "carries two assessments, one assessment per parcel." The foregoing evidence provided ample support for the trial court's conclusion.

Plaintiff suggests that other evidence in the record compelled the trial court to deem his condominium a single unit. Plaintiff points to letters from the City in 2004 and 2009 where the City characterized the condominium as one unit, stated that "the City recognizes a total of 110 townhome units" in the Association development, and amended the Certificate of Occupancy for Lot 5 to remove reference to 2009 Elm Leaf Court. However, when reviewing a decision for substantial evidence, "our task 'is not to weigh conflicting evidence and determine who has the better argument.' [Citation.]" (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 435; *Kimble v. Bd. of Education* (1987) 192 Cal.App.3d 1423, 1427 ["An appellate court is without power to judge the effect or value of the evidence, weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom."].) Having found that the trial court's decision was supported by substantial evidence, plaintiff's competing evidence does not mandate a contrary result. Additionally, we note that plaintiff's evidence is of comparatively less persuasive value than the evidence relied on by the court because the

letters were drafted at least 20 years after the Modified Plan was recorded and do not contain statements of the individuals or entities who originally drafted the Association's governing documents.

Because we conclude that substantial evidence supports the trial court's determination that plaintiff's condominium constitutes two units for purposes of Association assessments under the CC&R's and the Modified Plan, we do not reach plaintiff's arguments regarding implied equitable servitudes. Additionally, because plaintiff did not allege more generally that the assessment allocation is unreasonable as applied to *all* unit owners in the development either in the trial court or on appeal, that argument is waived. (*Nahrstedt, supra,* 8 Cal.4th at p. 386 ["the reasonableness or unreasonableness of a [CC&R provision] … is to be determined not by reference to facts that are specific to the objecting homeowner, but by reference to the common interest development as a whole"]; *Beoriz v. Wahl* (2000) 84 Cal.App.4th 485, 498, fn. 9 ["appellants may not raise a factually novel legal theory of liability on appeal"]; § 5975, subd. (a) [CC&R's "shall be enforceable equitable servitudes, unless unreasonable"].) Since substantial evidence supports its decision, the trial court properly denied plaintiff's claims for relief and declared the Association the prevailing party.

## B. ATTORNEY'S FEES

Plaintiff argues that the Association was not entitled to any attorney's fees because those fees were borne by the Association's insurance company under a reservation of rights. The Association claims the trial court erred by denying its pre-litigation attorney's fees and costs and also requests attorney's fees and costs incurred on appeal. Though we generally review orders granting or denying attorney's fees for an abuse of discretion, whether a party meets the statutory requirements for entitlement to fees is a question of law we review de novo. (*MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1397; *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)

11

## 1. The Association is Entitled to Reasonable Attorney's Fees and Costs

The trial court granted the Association attorney's fees and costs related to its work after plaintiff filed the complaint, citing former section 1354, subdivision (c). Former section 1354, subdivision (c) provided: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (Former § 1354, subd. (c), repealed by Stats. 2012, ch. 180, § 1, p. 2840.) In rejecting plaintiff's claim that the Association's insurance coverage should foreclose recovery of attorney's fees, the court reasoned that recovery was proper because the Association "was obligated to pay its attorney's fees and costs regardless of whether its insurer did or did not pay its defense costs or otherwise had an obligation to defend its insured." We agree.

Claims similar to plaintiff's have been rejected in cases involving contractual attorney's fees awarded under section 1717, subdivision (a), which, like former section 1354, subdivision (c), entitles prevailing parties to "reasonable attorney's fees in addition to other costs" if the parties' contract specifically provides for fees. (§ 1717, subd. (a).) In *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397 (*Staples*), the lessor of a commercial building (Hoefke) prevailed in a breach of lease action brought by a tenant (Staples). (*Id.* at pp. 1401, 1403, 1409.) The lease provided that "the prevailing party 'shall be entitled to his reasonable attorney's fees to be paid by the losing party as fixed by the court.' " (*Id.* at p. 1409.) On appeal, Staples argued that Hoefke was not entitled to attorney's fees because his fees were paid by an insurance company under a reservation of rights. (*Ibid.*) The appellate court disagreed, reasoning "we can perceive of no reason why plaintiffs should profit from defendant Hoefke's foresight in obtaining insurance coverage. Plaintiffs were not entitled to avoid their contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that they sued a defendant who obtained insurance coverage providing a defense." (*Id.* at p. 1410; accord *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 652 [rejecting contention that fee request should be

12

denied because the fees were paid by insurance company rather than directly by prevailing party].)

We find the reasoning of *Staples* equally applicable here. Plaintiff filed his complaint and prosecuted his case based on alleged violations of the Davis-Stirling Act and requested attorney's fees in his prayer for relief, showing express knowledge of the attorney fee provision of that Act. Upon losing the case, we see no reason why plaintiff should be able to avoid his statutory obligation to pay reasonable attorney's fees "based on the fortuitous circumstance that [plaintiff] sued a defendant who obtained insurance coverage providing a defense." (*Staples, supra,* 189 Cal.App.3d at p. 1410.)

Plaintiff's reliance on *Flannery v. Prentice* (2001) 26 Cal.4th 572 (*Flannery*), is misplaced. *Flannery* involved a dispute between a prevailing plaintiff and her attorneys over ownership of attorney's fees awarded under the fee provision of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). (*Flannery,* at p. 575.) The Supreme Court held that attorney's fees awarded under Government Code section 12965 "belong, absent an enforceable agreement to the contrary, to the attorneys who labored to earn them." (*Id.* at p. 590.) The court had no occasion to consider a losing party's responsibility to pay attorney's fees when the prevailing party's fees were paid for by an insurance company. Because "an opinion is not authority for a proposition not therein considered," *Flannery* does not assist plaintiff. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2; *Flannery,* at p. 581.) Thus, the trial court properly awarded the Association attorney's fees and costs related to the litigation phase of the case.

## 2. The Association is Entitled to Reasonable Pre-Litigation Attorney's Fees and Costs

Having determined that the Association's insurance coverage did not foreclose it from recovering attorney's fees, we must decide whether the trial court erred when it denied the Association's request for pre-litigation alternative dispute resolution (ADR) attorney's fees and costs as a matter of law. The trial court reasoned that former section

13

1369.570, subdivision (b), which mandated that "[t]he costs of the alternative dispute resolution [in Davis-Stirling Act cases] shall be borne by the parties," demonstrated legislative intent that each party bear its own pre-litigation ADR attorney's fees and costs. On appeal, the Association contends that they are entitled to pre-litigation attorney's fees and costs under former section 1354, subdivision (c), which provided: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (Former § 1354, subd. (c), repealed by Stats. 2012, ch. 180, § 1, p. 2895.)

Former section 1369.570 (now codified as section 5955) stated that when a matter is referred to ADR "[a]fter an enforcement action is commenced," ADR "costs … shall be borne by the parties." (Former § 1369.570, subds. (a) and (b), repealed by Stats. 2012, ch. 180, § 1, p. 2895.) Because the parties here engaged in ADR *before* plaintiff filed suit, former section 1369.540 (now codified as section 5940), which governs pre-litigation ADR, is more relevant to this case. Like former section 1369.570, former section 1369.540, subdivision (c) stated: "The costs of the alternative dispute resolution shall be borne by the parties." (Former § 1369.540, subd. (c), repealed by Stats. 2012, ch. 180, § 1, p. 2894.)

The parties disagree regarding whether former section 1369.540 affected former section 1354, subdivision (c), which entitled the Association to "reasonable attorney's fees and costs." (Former § 1354, subd. (c), repealed by Stats. 2012, ch. 180, § 1, p. 2895.) "The words of [a] statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. … Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

14

The Legislature first added ADR provisions to the Davis-Stirling Act in 1993 as amendments to former section 1354, subdivisions (b) and (c), through Assembly Bill 55. (Stats. 1993, ch. 303, § 1, pp. 2051-2052.) Each subdivision provided that "[t]he costs of the alternative dispute resolution shall be borne by the parties."[2] (Stats. 1993, ch. 303, § 1.) Assembly Bill 55 also retained pre-existing language in former section 1354 mandating the award of "reasonable attorney's fees and costs" to prevailing parties in Davis-Stirling Act cases. (Stats. 1993, ch. 303, § 1, p. 2051.) An analysis of the bill by the Senate Committee on the Judiciary stated the bill "is intended to divert the growing number of minor disputes involving a [common interest development's] covenants and restrictions away from congested courts and into ADR programs." (Senate Com. on Judiciary, Analysis of Assem. Bill No. 55 (1993-1994 Reg. Sess.) as amended July 2, 1993.)

This history suggests the Legislature added the ADR provisions to prevent courts from having to devote limited resources to disputes that could be resolved through the use of ADR. Consistent with that purpose, the Legislature specified that ADR costs were to be borne by the parties to the dispute as opposed to the courts. Because the statutory text was meant to protect courts from having to bear the costs of ADR, we find former section 1369.540 did not preclude the prevailing party in an action from recovering its pre-litigation ADR attorney's fees and costs.

Plaintiff argues the Association is not entitled to attorney's fees and costs for pre-litigation work because former section 1354, subdivision (c), applied only to those fees incurred *after* commencement of "an action." *Grossman v. Park Fort Washington Assn.* (2012) 212 Cal.App.4th 1128 (*Grossman*), analyzed that issue and determined that pre-

---

[2] The ADR cost provisions were later moved to former sections 1369.540 and 1369.570 (Stats. 2004, ch. 754, § 6, p. 5845) before being reorganized and recodified to sections 5940 and 5955 (Stats. 2012, ch. 180, § 2, pp. 2894-2895.)

15

litigation ADR attorney's fees were recoverable under former section 1354. (*Id.* at p. 1134.)

In *Grossman*, the Grossmans prevailed in an action against their homeowners association, entitling them to reasonable attorney's fees under former section 1354, subdivision (c). (*Grossman, supra,* 212 Cal.App.4th at p. 1131.) On appeal from the trial court's award of attorney's fees for, among other things, "time spent on pre-litigation mediation," the defendant argued that former section 1354, subdivision (c) did not allow the award of pre-litigation fees. (*Id.* at p. 1132.) The court noted that "[t]he Davis-Stirling Act includes provisions addressing [ADR]," including the requirement that " 'an owner or a member of a common interest development may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article.' " (*Grossman,* at p. 1132, quoting former section 1369.520, subd. (a).)[3]

Looking to the text of former section 1354, subdivision (c), the *Grossman* court noted the statute "does not explicitly limit the recovery of attorney fees and costs to those items *incurred in* the lawsuit itself." (*Grossman, supra,* 212 Cal.App.4th at p. 1133, original italics.) Instead, the fee provision "specifies two conditions," the "existence of 'an action to enforce the governing documents' … [and] the existence of a prevailing party." (*Grossman*, at p. 1133, quoting former section 1354, subd. (c).) Because pre-litigation ADR is "effectively … mandatory" in Davis-Stirling Act cases and the court could find no policy reasons for excluding pre-litigation ADR fees, the court concluded that "when attorney fees and costs expended in pre-litigation ADR satisfy the other

_____

[3] The pre-litigation ADR requirement is now contained in section 5930, subdivision (a), which provides: "An association or a member may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article."

16

criteria of reasonableness, those fees and costs may be recovered in an action to enforce the governing documents of a common interest development." (*Id.* at p. 1134.)

We agree with the reasoning of *Grossman* and find that the trial court erred in concluding that former section 1354, subdivision (c) precluded the Association from recovering pre-litigation attorney's fees and costs. We express no opinion on the reasonableness of the Association's request for pre-litigation fees and costs and leave that determination to the sound discretion of the trial court on remand.

### 3. The Association is Entitled to Reasonable Appellate Attorney's Fees and Costs

The Association requests "all attorney's fees and cost[s] incurred since the judgment was entered," which we understand as a request for attorney's fees related to the instant appeal. "A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise." (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499.) As former section 1354, subdivision (c) did not preclude the Association from recovering attorney's fees for protecting its judgment on appeal, we determine the Association is entitled to reasonable appellate attorney's fees and we remand the matter for the trial court to determine the amount.

### III.    DISPOSITION

We conclude that the term "unit" is ambiguous as used in the CC&R's and Modified Plan and that substantial evidence supports the trial court's decision that plaintiff's condominium encompasses two units for assessment purposes. Because the trial court erroneously concluded that it lacked authority to award pre-litigation attorney's fees and costs, the amended judgment is reversed and the matter remanded for the trial court to determine the Association's reasonable pre-litigation attorney's fees and costs as well as its reasonable attorney's fees on appeal. The Association shall recover its costs on appeal.

17

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Mihara, J.