Filed 2/3/16  Newport Harbor Offices & Marina v. Morris Cerullo World Evangelism CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| NEWPORT HARBOR OFFICES & MARINA, LLC,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>MORRIS CERULLO WORLD EVANGELISM et al.,<br><br>    Defendants and Respondents. | G050243<br><br>(Super. Ct. No. 30-2011-00479442)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed in part, reversed in part, and remanded with directions.  Motion to strike appellant's opening brief.  Denied.  Motion to augment record.  Granted as request for judicial notice.

Alston, Alston & Diebold, Elaine B. Alston; Copenbarger & Associates and Paul D. Copenbarger for Plaintiff and Appellant.

Galuppo & Blake, Louis A. Galuppo, Steven W. Blake and Daniel T. Watts for Defendants and Respondents Morris Cerullo World Evangelism, Plaza del Sol Real Estate Trust and Roger Artz.

Knypstra Law, Bradley P. Knypstra and Grant Hermes for Defendants and Respondents Dennis A. D'Alessio and Vertical Media Group, Inc.

No appearance for Defendant and Respondent William Packard.

\*        \*        \*

## INTRODUCTION

In a second amended complaint, plaintiff and appellant Newport Harbor Offices & Marina, LLC (NHOM), asserted 15 causes of action against various combinations of seven defendants (collectively, Defendants).[1] The trial court sustained without leave to amend demurrers to the seventh through 13th causes of action and granted a motion for judgment on the pleadings in favor of one defendant on the 11th through 13th causes of action. NHOM voluntarily dismissed without prejudice the rest of the second amended complaint and appealed. The appeal challenges the trial court's rulings sustaining without leave to amend the demurrers to the seventh through 13th causes of action.

Defendant and respondent Morris Cerullo World Evangelism (Cerullo) is the sublessor and NHOM is the sublessee under a sub-ground lease (the Sublease) of real property in Newport Beach. At its core, this lawsuit is a breach of contract case between NHOM and Cerullo arising out of a dispute over the issue whether the Sublease imposes

---

[1] The causes of action are (1)-(2) declaratory relief; (3)-(5) fraud; (6) breach of contract; (7)-(11) intentional interference with contractual relations; (12) interference with prospective contractual relations; (13) trespass; (14) violation of Business and Professions Code section 17200; and (15) breach of fiduciary duty.

on the sublessee (NHOM) an obligation to maintain and repair the leased property and the improvements constructed on the property. Resolution of the dispute over the meaning of the Sublease is not before us now. The causes of action at issue in this appeal alleged that different combinations of Defendants, acting as agents of each other and in conspiracy, tortiously interfered with the Sublease and four other contracts, intentionally interfered with NHOM's prospective economic advantage, and committed trespass. We affirm in part, reverse in part, and remand, as set forth in the disposition.

## ALLEGATIONS OF SECOND AMENDED COMPLAINT

### I.

### The Parties

Plaintiff and appellant NHOM is a limited liability company with two members—Paul D. Copenbarger and Kent A. McNaughton. NHOM is governed by an operating agreement (the Operating Agreement) between its two members.

Defendant and respondent Cerullo is a California corporation. Defendant and respondent Plaza del Sol Real Estate Trust (Plaza del Sol) is a business organization of unknown form and is wholly owned and controlled by Cerullo. Defendant and respondent Roger Artz is a vice-president of Cerullo and the trustee of Plaza del Sol.

Defendant and respondent Vertical Media Group, Inc. (VMG), is a Delaware corporation. Defendant and respondent Dennis A. D'Alessio is the president of VMG and is alleged to have acted on its behalf. Defendant Newport Harbor Ventures, LLC (NHV), is a California limited liability company. D'Alessio is the manager of NHV. NHV has not appeared in this appeal.

Defendant and respondent William Packard is a licensed real estate salesman. He worked for Pacific West Asset Management, Inc. (Pacific West), which was hired by NHOM to manage the property. Packard acted as a leasing agent for

3

NHOM.  Packard was not acting within the scope of any employment or agency with Pacific West when he engaged in the acts alleged to be wrongful.  Packard has not appeared in this appeal.

Defendants can be separated into three groups:

(1)  The Cerullo Defendants:  Cerullo, Plaza del Sol, and Artz

(2)  The D'Alessio Defendants:  D'Alessio, NHV, and VMG

(3)  Packard

Lloyd Copenbarger is the brother of Paul Copenbarger.  He is the trustee of The Hazel I. Maag Trust (the Maag Trust).

## II.

### Agency and Conspiracy Allegations

The second amended complaint alleged that "in connection with the actions and disputes which are the subject of this Complaint, at all times relevant, each of the defendants was the agent, servant, and/or employee of each and all of the other defendants and was acting in the course and scope of such agency and/or employment." The second amended complaint also alleged that Defendants "entered into a conspiracy with each other for the purposes of wrongfully terminating the S[ublease] . . . and requiring NHO[M] to quitclaim ownership of the IMPROVEMENTS . . . to one or more of [them].  Each of the Defendants took the actions set forth in this Second Amended Complaint in furtherance of the conspiracy."

## III.

### The Ground Lease, the Sublease, and
### the Improvements to the Property

In 1963, John J. Jakosky and Katherine F. Jakosky, as lessors, and F. David Young, as lessee, entered into a 55-year ground lease (the Ground Lease) of unimproved

4

real property (the Property) in Newport Beach. Under the terms of the Ground Lease, the lessee is the owner of any improvements constructed on the Property.

In 1987, improvements consisting of a multistory office building, marina, and parking structure (the Improvements) were constructed on the Property. The lessee under the Ground Lease was the owner of the Improvements.

Sometime before December 2003, Cerullo and/or Plaza del Sol became the lessee under the Ground Lease. In January 2004, Cerullo entered into the Sublease, which has a term expiring in November 2018. The Sublease required NHOM to "keep and perform all of the obligations" of Cerullo under the Ground Lease. By quitclaim deed, Cerullo conveyed title to the Improvements to NHOM. As owner of the Improvements to the Property, NHOM made business decisions about "what repairs and maintenance to perform" to the Improvements.

NHOM paid $4.5 million to Cerullo to become the sublessee of the Property and the owner of the Improvements. NHOM used $350,000 of its own funds and borrowed $3 million from the Maag Trust and $1.15 million from Plaza del Sol. The loan from the Maag Trust was evidenced by a promissory note (the Maag Note), which was secured by a first priority deed of trust on the Improvements and on the Sublease (the Maag Deed of Trust). At the same time, NHOM executed a promissory note in the amount of $1.15 million in favor of Plaza del Sol. The promissory note to Plaza del Sol (the Plaza del Sol Note) was made to pay for the balance of the purchase price of the Improvements and acquisition of the Sublease. The Plaza del Sol Note was secured by a second priority deed of trust on the Improvements and on the Sublease.

NHOM and Pacific West entered into a management agreement (the Pacific West Agreement) by which Pacific West was retained to manage the business of renting space, collecting rents, and "fulfilling the obligations" of NHOM under the rental agreements with its tenants. Packard acted as NHOM's leasing agent.

5

## IV.

### NHOM's Alleged Deferral of Maintenance and Default
### Under the Maag Note and the Maag Deed of Trust

The second amended complaint alleged: "[B]eginning in mid-2008, as a result of the major slump in the economy which resulted in tenants vacating the office suites and marina slips, and disagreements between the Managing Members of NHO[M] concerning rental rates and tenant improvements, NHO[M] began to have cash flow problems. As a result of cash flow issues NHO[M] began to defer some non-essential maintenance."

In September 2009, the Maag Trust declared a default of the Maag Note and the Maag Deed of Trust, based on NHOM's failure to maintain and repair the Improvements, NHOM's failure to make timely payments of amounts due under the Maag Note, and a change in NHOM's financial condition. In early 2010, Lloyd Copenbarger became concerned that Plaza del Sol would declare a default under the Plaza del Sol Note and would commence foreclosure proceedings against NHOM. To avert foreclosure, Lloyd Copenbarger and Paul Copenbarger entered into negotiations with Cerullo and Plaza del Sol to obtain an agreement by which the Plaza del Sol Note would not be foreclosed.

In April 2010, Cerullo, Plaza del Sol, and the Maag Trust entered into an agreement called "Agreement Re: Assignment and Transfer of Promissory Note and Deed of Trust and Ground Lease Enforcement" (the Assignment Agreement) to prevent Plaza del Sol from foreclosing. Under the terms of the Assignment Agreement, the Maag Trust agreed to make certain payments on the Plaza del Sol Note, to reimburse Plaza del Sol for real property taxes it paid on the Improvements and the Property, and to make future payments to Plaza del Sol in the amount equal to payments due on the Plaza del

Sol Note as such payments became due. Cerullo and Plaza del Sol agreed that, for a period of one year, they would not declare a default under the Sublease on account of then existing conditions or circumstances so long as the Maag Trust made the agreed-upon payments.

## V.

### The Alleged Conspiracy to Terminate the Sublease and
### Force NHOM to Convey the Improvements

Defendants then "entered into a conspiracy with each other for the purposes of wrongfully terminating the S[ublease] . . . and requiring NHO[M] to quitclaim ownership of the I[mprovements] . . . to one or more of [them]. Each of the Defendants took the actions set forth in this Second Amended Complaint in furtherance of the conspiracy."

From mid-2010 through early 2011, D'Alessio met with Paul Copenbarger, Lloyd Copenbarger, and Packard to discuss the Ground Lease, the Sublease, the Pacific West Agreement, the Assignment Agreement, and the agreement that Packard act as leasing agent for NHOM.

Starting in mid-2010, D'Alessio made offers to NHOM to become the assignee of the Sublease and to purchase the Improvements on the Property. He offered to assume the Maag Note and the Plaza del Sol Note and to pay NHOM $500,000. In late 2010 or early 2011, D'Alessio approached Paul Copenbarger and Lloyd Copenbarger and proposed that they "breach their fiduciary duties and contractual obligations." D'Alessio specifically proposed that Cerullo declare a default under the Sublease and thereafter commence an unlawful detainer action against NHOM so that it would lose its interest in the Sublease and the Improvements. Under D'Alessio's proposal, Paul Copenbarger and the Maag Trust would not take any action to challenge the declaration of default under the Sublease and would not contest the unlawful detainer action. In response to

7

D'Alessio's proposal, Paul Copenbarger told D'Alessio that such an agreement would be in violation of his "legal and moral obligations" to NHOM and McNaughton.

D'Alessio then approached McNaughton and proposed that he participate in "a similar scheme." D'Alessio offered to provide McNaughton information to use in his litigation with the Maag Trust, Paul Copenbarger, and NHOM. Pursuant to this agreement, McNaughton allegedly refused to allow NHOM to defend Cerullo's unlawful detainer action, to verify an answer to the unlawful detainer complaint, to appear at a deposition without a subpoena, to provide documents to counsel for NHOM, and to sign a declaration in opposition to a summary adjudication motion in the unlawful detainer action.

Sometime before March 3, 2011, D'Alessio approached Artz and proposed that Cerullo and Plaza del Sol breach the Sublease and the Assignment Agreement by declaring a default under the Sublease on the false ground that NHOM failed to maintain the Improvements. The goal was for Cerullo to terminate the Sublease and acquire the Improvements. Cerullo thereafter would convey the Improvements to NHV and/or assign the Ground Lease to NHV or enter into a new sublease with NHV. "Such actions would deprive NHO[M] of the I[mprovements] which it owns and its contractual rights under the S[ublease] and the [Assignment Agreement]." In response to D'Alessio's proposal, Cerullo and Plaza del Sol entered into an asset management and option agreement (the Management Agreement) with NHV. After terminating the Sublease and acquiring the Improvements, then, under the Management Agreement, Cerullo would assign the Ground Lease to NHV or enter into a sublease with NHV.

D'Alessio's ultimate goal allegedly was to convert the Improvements to a boutique hotel. On many occasions between late 2010 and April 22, 2011, D'Alessio and others, with Packard's cooperation and assistance, entered the Property and inspected the Improvements for the purpose of facilitating conversion to a boutique hotel. These entries and inspections were made without NHOM's permission and knowledge.

8

Without NHOM's knowledge or permission, Packard contacted "third party contractors" and allowed them to enter the Property and inspect the Improvements in order to prepare bids for services to convert the Property to a boutique hotel. D'Alessio represented to third parties that he and/or NHV was the owner or sublessee of the Property and the Improvements and permitted third parties to enter the Property to prepare bids.

In April 2011, D'Alessio, NHV, Plaza del Sol, and Cerullo entered into a modification to the Management Agreement, under which VMG replaced NHV as the asset manager.

## VI.

### Notices of Default and Unlawful Detainer Action

On April 22, 2011, D'Alessio and VMG, on behalf of Cerullo and Plaza del Sol, sent NHOM a letter of the same date, stating that NHOM had breached paragraph 1.2 of the Sublease by failing to maintain and repair both the Property and the Improvements. The April 22 letter stated: "[W]e have conducted a limited inspection of the Property and have discerned there to be a wholesale failure on the part of [NHOM] to perform even a modicum of maintenance or repair to any aspect of the building or any part of it, to include major structural components." The letter included a list of maintenance and repair issues, with a demand that NHOM address them within 30 days, and a 30-day notice to cure certain maintenance and other related defaults under the Ground Lease and the Sublease.

On May 10, 2011, D'Alessio, Artz, and Packard met with John Jakosky, one of the trustees of the trust that owns the Property subject to the Ground Lease, and told him NHOM was in default of the Sublease for not maintaining the Improvements. D'Alessio and Artz told Jakosky that NHOM's failure to repair and maintain the Improvements was a proper ground for terminating the Sublease and that they were in the process of terminating the Sublease. During this meeting, D'Alessio gave Jakosky a

9

brochure illustrating the plan for converting the Improvements to a boutique waterfront hotel. D'Alessio expressed a desire to extend the term of the Ground Lease.

By letter dated May 18, 2011, Paul Copenbarger, on behalf of NHOM, responded to the April 22, 2011 letter. He asserted the sublessee's duty to maintain and repair under the Sublease did not extend to the Improvements on the Property because the Improvements were never subject to the Ground Lease and were conveyed by quitclaim deed to NHOM. By letter of the same date, Lloyd Copenbarger, as trustee of the Maag Trust, informed Artz and Plaza del Sol that the Maag Trust had requested that Pacific West determine what repairs and maintenance needed to be made at the Property and arrange to make those repairs and maintenance, at the Maag Trust's expense.

On May 26, 2011, D'Alessio and VMG, on behalf of Cerullo and Plaza del Sol, served a three-day notice to cure or quit (the three-day Notice) on NHOM, based on "[y]our failure to cure the breaches of your Sub-Ground Lease . . . ." Five days later, Paul Copenbarger, both in his individual capacity and derivatively on behalf of NHOM, filed this lawsuit. On June 21, 2011, Cerullo filed an unlawful detainer action against NHOM (the Unlawful Detainer Action).

On August 1, 2011, VMG served NHOM with a letter of the same date, stating that NHOM was in breach of the Ground Lease and the Sublease. The letter asserted NHOM was committing waste, allowing a public and private nuisance, and violating city building codes, and demanded that NHOM perform specified repairs and maintenance to the Improvements within 30 days. (Some of the repairs and maintenance demanded in the August 1, 2011 letter were different from those demanded in the April 22, 2011 letter.) On March 6, 2012, a 60-day notice to cure was issued to the Maag Trust. Within the 60-day period, the Maag Trust cured all of the items listed in the 60-day notice to cure.

10

## PROCEDURAL HISTORY

Paul Copenbarger, acting individually and derivatively on behalf of NHOM filed the original complaint in May 2011. The Cerullo Defendants, D'Alessio, and VMG brought a special motion to strike the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16. The trial court granted the motion. In *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, a panel of this court reversed the order granting the special motion to strike and remanded.

Following remand, Paul Copenbarger filed a first amended complaint in response to demurrers brought by D'Alessio and VMG. Among other things, the first amended complaint added NHV and Packard as defendants. Various demurrers were brought against the first amended complaint. The trial court sustained some of the demurrers with leave to amend, while another was withdrawn by the demurring parties.

Paul Copenbarger filed the second amended complaint, which had the 15 causes of action identified above in footnote 1. The Cerullo Defendants demurred to the first through 14th causes of action. D'Alessio and VMG demurred to the seventh through 13th causes of action. Packard demurred to the seventh through 10th causes of action.

The trial court sustained without leave to amend the demurrers of the Cerullo Defendants, D'Alessio, and VMG to the seventh through 13th causes of action. The trial court sustained without leave to amend Packard's demurrers to the seventh through 10th causes of action. The court continued the hearing on the demurrers to the first through sixth and 14th causes of action.

In April 2014, NHOM submitted a request for dismissal without prejudice of the first through sixth causes of action. The next day, NHOM orally requested dismissal without prejudice of the 14th cause of action. On May 20, the trial court granted Packard's motion for judgment on the pleadings on the 11th, 12th, and 13th causes of action. On June 20, NHOM filed a request for dismissal without prejudice of

11

the 15th cause of action (against Packard), and, on June 30, filed a request for dismissal without prejudice of the entire second amended complaint against NHV. A judgment of dismissal was entered in September 2014.

NHOM filed its notice of appeal in June 2014, before the judgment of dismissal was entered. Although filed prematurely, the notice of appeal is timely per se because it was filed after rendition of the trial court's rulings on the demurrers and after NHOM voluntarily dismissed the first through sixth and the 14th causes of action. (Cal. Rules of Court, rule 8.104(d)(1); see, e.g., *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906.) The notice of appeal states only that NHOM appeals from the order dismissing the Cerullo Defendants, D'Alessio, and VMG, and does not mention the orders sustaining Packard's demurrer and granting Packard's motion for judgment on the pleadings. We therefore do not consider the notice of appeal as challenging those rulings. Lest there be any confusion, our disposition will affirm the judgment as to Packard.

The appendix lays out the causes of action. The causes of action at issue in this appeal are in italics.

## MOTION TO STRIKE APPELLANT'S OPENING BRIEF

Before delving into the merits, we address a motion filed by the Cerullo Defendants to strike NHOM's opening brief on the ground it violates rule 8.204 of the California Rules of Court. The Cerullo Defendants assert three rule violations: (1) the brief was filed without a table of contents and a table of authorities (Cal. Rules of Court, rule 8.204(a)(1)(A)); (2) the brief includes a declaration that is not part of the appellate record (*id.*, rule 8.204(a)(2)(C)); and (3) the brief does not consistently use 13-point font (*id.*, rule 8.204(b)(4)).

We deny the motion to strike. As to the first point, NHOM explains in its opposition to the motion to strike that its opening brief was originally bound and sent to

12

this court for filing on November 20, 2014, without a table of contents and a table of authorities; NHOM immediately recognized the mistake; and, on that same day, NHOM served and filed a corrected brief. We have the corrected brief. As to the second point, NHOM submitted a motion to augment the record with the declaration attached to the opening brief. We denied the motion to augment and decline to consider the declaration as part of the record on appeal. (We will consider the declaration for the limited purpose of a request for leave to amend the complaint.) As to the third point, NHOM points out, and it appears to us, that 13-point font was used throughout the appellant's opening brief and any variation in size was caused by photocopying.

## STANDARD OF REVIEW

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

In reviewing the sustaining of a demurrer, we address whether the results, and not trial court's reasons, are correct. (*Perkin v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 492, 501.) We apply the abuse of discretion standard to the trial court's decision to deny leave to amend. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

13

## DISCUSSION

## I.

## Interference with Contract Causes of Action

A. *Elements of Interference with Contract Cause of Action*

The seventh through 11th causes of action are for interference with contractual relations, with each cause of action directed to a different contract. "The elements of a cause of action for interference with contractual relations are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages. [Citation.] Proof the interfering conduct was wrongful, independent from the interference itself, is not required to recover for interference with contractual relations. [Citation.]" (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 237-238.)

As to the fourth element, the plaintiff must show either (1) the defendant induced an actual or inevitable breach of the contract or (2) the defendant's conduct made the plaintiff's performance, and inferentially enjoyment, under the contract more burdensome or costly. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126-1127, 1129.)

B. *Seventh Cause of Action: Interference with the Sublease*

In the seventh cause of action, NHOM alleged that Artz, the D'Alessio Defendants, and Packard interfered with the Sublease (between NHOM and Cerullo). NHOM alleged that sometime before March 2011, D'Alessio approached Artz and proposed that Cerullo and Plaza del Sol breach the Sublease and the Assignment Agreement by declaring a default under the Sublease on the false ground that NHOM failed to maintain the Improvements.

14

But NHOM alleged that "in connection with the actions and disputes which are the subject of this Complaint, at all times relevant, each of the defendants was the agent, servant, and/or employee of each and all of other defendants and was acting in the course and scope of such agency and/or employment." NHOM also alleged that Defendants "entered into a conspiracy with each other for the purposes of wrongfully terminating the S[ublease] . . . and requiring NHO[M] to quitclaim ownership of the I[mprovements] . . . to one or more of [them]. Each of the Defendants took the actions set forth in this Second Amended Complaint in furtherance of the conspiracy."

These agency and conspiracy allegations defeat the cause of action for interference with the Sublease. Only a noncontracting party may be held liable in tort for intentional interference with performance of the contract. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 513.) A contracting party is incapable of interfering with the performance of his or her own contract and cannot be held liable in tort for conspiracy to interfere with his or her own contract. (*Id.* at pp. 513-514.) Under the agent's immunity rule, "duly acting agents" cannot be held liable for conspiring with their principals. (*Id.* at p. 512.) The agent's immunity rule is derived from the principle that agents cannot conspire with their principals when the agents act in their official capacity on the principal's behalf. (*Id.* at p. 512, fn. 4.) In addition, "'ordinarily corporate agents and employees acting for or on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged.'" (*Ibid.*)

Because Artz, the D'Alessio Defendants, and Packard were alleged to be agents of Cerullo, they in effect were contracting parties and cannot be held liable for interfering with the Sublease. Under the agent's immunity rule, Artz, the D'Alessio Defendants, and Packard cannot be held liable for conspiring with each other and with Cerullo to interfere with the Sublease.

15

NHOM concedes the demurrers to the seventh cause of action were correctly sustained as to Artz, who is a vice-president of Cerullo and the trustee of Plaza del Sol. NHOM argues that D'Alessio and VMG did not become agents of Cerullo until after they had engaged in the acts allegedly interfering with the Sublease. Such distinction was not made in the second amended complaint; rather, NHOM alleged that Defendants were at all relevant times the agents of each other and conspired with each other to engage in the wrongful acts alleged.

In its appellant's reply brief, NHOM represents that "to the extent that the SAC [(second amended complaint)] was not clear with respect to this assertion, the SAC could be amended to make such distinction clear." We treat this representation as a request to seek leave to amend, which may be made for the first time on appeal. (*Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1423.) If NHOM sorts out the agency and conspiracy allegations, and makes those allegations with more precision, it is reasonably possible that NHOM could cure the defects in the seventh cause of action with respect to D'Alessio and VMG. We therefore reverse the judgment as to the seventh cause of action with respect to D'Alessio and VMG to give NHOM another chance to state a cause of action against them. The judgment as to the seventh cause of action with respect to Artz and Packard is affirmed.

C. *Eighth Cause of Action: Interference with the Assignment Agreement*

In the eighth cause of action, NHOM alleged that Artz, the D'Alessio Defendants, and Packard intentionally interfered with the Assignment Agreement by causing Cerullo and Plaza del Sol to declare a default of the Sublease. The parties to the Assignment Agreement are the Maag Trust, Cerullo, and Plaza del Sol.

NHOM is not named as a party to the Assignment Agreement. The eighth cause of action is based on the theory that NHOM is an intended third party beneficiary of the Assignment Agreement. "Third parties claiming the right to performance under an

16

agreement made by others are classified as either intended or incidental beneficiaries." (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1022.) Intended beneficiaries may demand enforcement of the contract; incidental beneficiaries may not. (*Ibid.*) A third party is an intended beneficiary if the contract expresses an intent to benefit the third party. (*Ibid.*) It is not enough that the third party would benefit incidentally from contract performance. (*Ibid.*) "'The contracting parties must have intended to confer a benefit on the third party.'" (*Ibid.*) The third person need not be named or identified in the contract to qualify as an intended beneficiary. (*Id.* at p. 1023.) It is not necessary that both contracting parties intended the third party to benefit from the contract: "'[I]t is sufficient that the promisor must have understood that the promisee had such intent.'" (*Ibid.*) The determination whether a third party is an intended beneficiary of a contract ultimately turns on the manifestation of intent to confer a benefit. (*Ibid.*) "'Ascertaining this intent is a question of ordinary contract interpretation.'" (*Ibid.*)

The second amended complaint alleged, sufficiently to withstand a demurrer, that NHOM was an intended third party beneficiary of the Assignment Agreement. The Assignment Agreement, which was incorporated into the second amended complaint, conferred significant benefits on NHOM. Under the Assignment Agreement, the Maag Trust agreed to make payments (owed by NHOM) on the Plaza del Sol Note, thereby preventing foreclosure of the deed of trust on the Improvements and the Sublease, and Cerullo and Plaza del Sol agreed not to declare default under the Sublease for a one-year period so long as the Maag Trust made the agreed-upon payments.

Although an express intent to benefit NHOM does not appear on the face of the Assignment Agreement, NHOM alleged that, during the negotiations leading to the Assignment Agreement, Lloyd Copenbarger and Paul Copenbarger stated that Lloyd Copenbarger intended to benefit NHOM. Paul Copenbarger explained that, due to his

17

relationship with McNaughton, NHOM could not be a party to the agreement. Lloyd Copenbarger expressed his intent that NHOM be a third party beneficiary to the Assignment Agreement. Evidence of the statements allegedly made by Paul Copenbarger and Lloyd Copenbarger during the negotiations leading to the Assignment Agreement would be admissible to prove a meaning to which that contract was reasonably susceptible. "'In determining the meaning of a written contract allegedly made, in part, for the benefit of a third party, evidence of the circumstances and negotiations of the parties in making the contract is both relevant and admissible.' [Citations.]" (*Spinks v. Equity Residential Briarwood Apartments*, *supra*, 171 Cal.App.4th at p. 1024.)

The Cerullo Defendants point to paragraphs 9 and 13 of the Assignment Agreement as expressing the intent there be no third party beneficiaries. Paragraph 9 of the Assignment Agreement states: "Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and inure to the benefit of the parties, and their respective successors and assigns." Paragraph 9 ensures the parties' successors and assigns will be bound by, and receive the benefits of, the Assignment Agreement. It did not foreclose the possibility of intended third party beneficiaries.

Paragraph 13 of the Assignment Agreement states: "Any party may, at any time by giving five (5) days' prior written notice to the other party, designate any other address in substitution of the foregoing address to which such notice will be given." The Cerullo Defendants argue that use of the singular phrase "the other party" means "there are only two parties to the contract." But the Assignment Agreement has three parties— the Maag Trust, Cerullo, and Plaza del Sol—and each of the three parties has a separate address for notices. The parties to the Assignment Agreement therefore could not have intended the phrase "the other party" to be singular. Further, the omission of a third party from a notice provision would not in itself mean the contract has no intended beneficiaries because they do not have to be named in the contract.

18

The eighth cause of action runs into the same tangle of agency and conspiracy allegations that bedevil the seventh cause of action. Because the second amended complaint alleged that Artz, the D'Alessio Defendants, and Packard were, at all relevant times, the agents of Cerullo and Plaza del Sol, they cannot be held liable for interference with the Assignment Agreement. NHOM concedes the demurrers to the eighth cause of action were correctly sustained as to Artz.

As was the case for the seventh cause of action, NHOM argues that D'Alessio and VMG did not become agents of Cerullo until after they had engaged in the acts allegedly interfering with the Assignment Agreement. As was the case for the seventh cause of action, it is reasonably possible NHOM can amend to cure the defects in the eighth cause of action if NHOM straightens out the agency and conspiracy allegations. We therefore reverse the judgment as to the eighth cause of action with respect to D'Allesio and VMG to give NHOM another opportunity to state a cause of action. In all others respects, the judgment as to the eighth cause of action is affirmed.

D. *Ninth Cause of Action: Interference with the Pacific West Agreement*

In the ninth cause of action, NHOM alleged the Cerullo Defendants and the D'Alessio Defendants interfered with the Pacific West Agreement (the agreement by which NHOM retained Pacific West to manage the Property). NHOM alleged in the ninth cause of action that Cerullo, Plaza del Sol, and the D'Alessio Defendants obtained the cooperation of Packard in the alleged scheme to wrongfully terminate the Sublease. To obtain Packard's cooperation, Cerullo and Plaza del Sol paid Packard a "secret commission" at the time of the execution of the Sublease, and Cerullo, Plaza del Sol, and/or D'Alessio loaned Packard money.

Under the Pacific West Agreement, Pacific West was retained to manage the business of renting space, collecting rents, and "fulfilling the obligations" of NHOM under the rental agreements with its tenants. The second amended complaint did not

19

allege that any defendant did anything to make NHOM's enjoyment of the Pacific West Agreement "more expensive and burdensome." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, *supra*, 50 Cal.3d at p. 1137.)  There were no allegations, for example, that Defendants caused Pacific West or Packard to breach the Pacific West Agreement or to less competently or diligently perform their obligations under it.  The trial court did not err by sustaining the demurrers to the ninth cause of action without leave to amend.

E. *Tenth Cause of Action:  Interference with the Maag Note and the Maag Deed of Trust*

In the 10th cause of action, NHOM alleged Defendants interfered with the Maag Note and the Maag Deed of Trust.  The trial court ruled that a note and deed of trust are not contracts.  A promissory note is a unilateral contract for the payment of money.  (*Haulman v. Crumal* (1936) 13 Cal.App.2d 612, 619; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 107, pp. 149-150.)  A deed of trust is a form of security that creates a lien on the secured property.  (4 Witkin, *supra*, Security Transactions in Real Property, §§ 4, 6.)

NHOM asserts the Maag Note and the Maag Deed of Trust are really components of a "financial agreement" between NHOM and the Maag Trust and, as such, together constituted a contract that can be the basis of an interference cause of action.  Calling the Maag Note and the Maag Deed of Trust a "financial agreement" does not make them anything other than a promissory note and a deed of trust.  Even assuming the Maag Note and the Maag Deed of Trust are contracts, the second amended complaint did not allege facts sufficient to state a cause of action for interference with them.  The gist of the 10th cause of action is that Defendants made demands on NHOM which caused the Maag Trust to make repairs to the Property and the Improvements in order to protect its security interest.  Under the terms of the Maag Note and the Maag Deed of Trust, the Maag Trust sought reimbursement from NHOM for the costs of those repairs.

20

NHOM alleged it had no obligation under the Sublease to maintain and repair the Property and the Improvements and, therefore, Cerullo breached the Sublease by declaring a default for NHOM's alleged failure to maintain and repair the premises. For the same reason, NHOM alleged it had no obligation to cure the defaults. The Maag Trust consequently had no obligation to spend money curing those defaults and would not need to cure them to protect its security interest. Under the Maag Note and the Maag Deed of Trust, the Maag Trust had the right to demand reimbursement from NHOM for any money the Maag Trust spent to repair the Property, or could declare a default for NHOM's failure to maintain, repair, and prevent waste. If NHOM were in breach of its maintenance and repair obligations under the Maag Note and the Maag Deed of Trust, then NHOM had an obligation to reimburse the Maag Trust regardless of anything Defendants might have done. If NHOM were not in breach of its maintenance and repair obligations under the Maag Note and the Maag Deed of Trust, then, regardless of anything Defendants might have done, NHOM had no obligation to reimburse the Maag Trust. In either case, Defendants could not have interfered with the Maag Note and the Maag Deed of Trust by issuing the various notices of default and notices to cure. The trial court did not err by sustaining the demurrers to the 10th cause of action without leave to amend.

F. *Eleventh Cause of Action: Interference with the Operating Agreement*

In the 11th cause of action, NHOM alleged Defendants interfered with the Operating Agreement. The Cerullo Defendants contend NHOM cannot recover for interference with the Operating Agreement because NHOM is not a party to it. The only parties to the Operating Agreement are Paul Copenbarger and McNaughton. Corporations Code section 17701.02, subdivision (s) defines an operating agreement as "the agreement . . . of all the members of a limited liability company."

21

The easy fix to this problem is to add Paul Copenbarger as a plaintiff to the 11th cause of action. The trial court stated it would "let that happen" if it were not for the 11th cause of action being "fatally vague" and lacking allegations of causation and disruption of the contractual relationship. In that regard, the Cerullo Defendants contend that NHOM has not alleged that their conduct made performance under the Operating Agreement more burdensome. The second amended complaint alleged in the 11th cause of action that Defendants were "offering and perhaps obtaining cooperation of MCNAUGHTON in the scheme to deprive NHO[M] of its ownership of the I[mprovements] and possession of the P[roperty]." McNaughton is alleged to have participated in the scheme by refusing to agree to allow NHOM to hire counsel to defend the Unlawful Detainer Action, to verify an answer to the unlawful detainer complaint, to appear without a subpoena for his deposition as the person most knowledgeable, to provide documents to counsel for NHOM, and to execute a declaration for use in opposition to a motion for summary adjudication in the Unlawful Detainer Action. In other words, Defendants interfered with the Operating Agreement by causing McNaughton to refuse to assist in the defense of the Unlawful Detainer Action.

The Cerullo Defendants contend those allegations do not state a cause of action for interference with contract because (1) the Operating Agreement did not prohibit McNaughton from competing with NHOM and (2) he had the right under the Operating Agreement to "vote his own conscience" and oppose actions taken by Paul Copenbarger. The Cerullo Defendants are right, but for the wrong reason. The question is not whether McNaughton had the right to do what he did, but whether Defendants engaged in conduct that made Paul Copenbarger's enjoyment of the Operating Agreement "more expensive and burdensome." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, *supra*, 50 Cal.3d at p. 1137.)

The 11th cause of action is deficient because it does not allege how Paul Copenbarger suffered any damage from McNaughton's conduct. In response to a

22

question at oral argument regarding the status of the Unlawful Detainer Action, counsel for NHOM filed an "Augmentation of the Record on Appeal" to include a voluntary dismissal without prejudice of the Unlawful Detainer Action, filed in October 2015. The record on appeal cannot be augmented with the request for dismissal because it was not filed in the trial court in this case. (Cal. Rules of Court, rule 8.155(a)(1).) We will, however, take judicial notice of the request for dismissal of the Unlawful Detainer Action. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

The request for dismissal of the Unlawful Detainer Action shows that NHOM is still in possession of the Property and the Improvements. There is no allegation McNaughton's conduct caused Paul Copenbarger to incur attorney fees in defending the Unlawful Detainer Action and protecting NHOM's interests that he would not otherwise have incurred.[2]

NHOM contends the trial court erred by denying leave to amend the 11th cause of action. NHOM does not explain how it would amend except to name Paul Copenbarger as a plaintiff. NHOM does not explain how it would cure the other deficiencies in the 11th cause of action. The trial court therefore did not err by denying leave to amend, and we affirm the judgment as to the 11th cause of action.

## II.

### Twelfth Cause of Action:  Interference with Prospective Economic Advantage

In the 12th cause of action, NHOM alleged Defendants interfered with its prospective economic relationship with the ground lessor. NHOM alleged it intended to

---

[2] Attached as exhibit No. 33 to the second amended complaint is a string of e-mail communications between Paul Copenbarger and McNaughton, regarding NHOM's response to the three-day Notice and the impending unlawful detainer. In one communication, Paul Copenbarger said, "I interpret your response as a refusal to approve of or to contribute to the expense of legal action by NHO[M] to protect its interests[;] I will proceed accordingly." The second amended complaint did not allege that McNaughton failed to contribute to NHOM's legal expenses.

23

seek from the ground lessor (the Jakosky Trust) a lease for the Property at the expiration of the Ground Lease.  NHOM alleged that Artz, Packard, and D'Alessio met with the trustee of the Jakosky Trust on May 10, 2011, and during that meeting defamed NHOM by claiming it was in violation of the Sublease.

The elements of a cause of action for interference with prospective economic advantage are (1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and wrongful conduct designed to interfere with or disrupt this relationship; (4) interference with or disruption of this relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful conduct.  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153-1154.)

The second amended complaint did not allege that NHOM had an existing economic relationship with the Jakosky Trust, but alleged only that NHOM intended to seek a new lease from the Jakosky Trust.  At the hearing on the demurrers to the second amended complaint, the trial court asked NHOM's counsel whether there had been any discussion between NHOM and the Jakosky Trust about a lease.  Counsel answered, "[n]o."  The court stated, "if I got a different answer from that, I would let you amend the complaint to make that clear."  NHOM filed a motion to augment the record with a declaration from its counsel stating she had learned, sometime before May 2011, that McNaughton had approached the trustee to discuss entering into a ground lease directly between NHOM and the Jakosky Trust.  Although we denied the motion to augment the record, we will consider the declaration as a request for leave to amend, which may be made for the first time on appeal.  (*Thornton v. California Unemployment Ins. Appeals Bd.*, *supra*, 204 Cal.App.4th at p. 1423.)

Amending the complaint to allege that McNaughton met with the trustee sometime before May 2011 would not, however, save the 12th cause of action.  The tort

24

of interference with prospective economic advantage protects the expectation the relationship will produce the desired benefit, not "'the more speculative expectation that a potentially beneficial relationship will arise.'" (*Korea Supply Co. v. Lockheed Martin Corp.*, *supra*, 29 Cal.4th at p. 1164.)  "Only plaintiffs that can demonstrate an economic relationship with a probable future economic benefit will be able to state a cause of action for this tort." (*Ibid.*)  One meeting between McNaughton and the trustee is not enough to create an economic relationship.  (*Sole Energy Co. v. Petrominerals Corp.*, *supra*, 128 Cal.App.4th at p. 243 [discussions that had just begun "in earnest" did not create necessary economic relationship].)

## III.

## Thirteenth Cause of Action:  Trespass

The 13th cause of action is for trespass and was asserted against Defendants.  The trespass cause of action is based on the allegations that "on multiple occasions" between late 2010 and April 22, 2011, D'Alessio and others, with Packard's cooperation and assistance, entered the Property and inspected the Improvements for the purpose of facilitating their conversion to a boutique hotel.  The inspections allegedly were made without NHOM's permission and knowledge.  Also without NHOM's knowledge or permission, Packard contacted "third party contractors" and allowed them to enter the Property and inspect the Improvements to prepare bids for services to convert the Property to a boutique hotel.  D'Alessio represented to third parties that he and/or NHV owned or was the sublessee of the Property and the Improvements and permitted third parties to enter the Property.

The Cerullo Defendants argue they cannot be liable for trespass because they had the right to enter onto the Property to evaluate its condition before leasing to new tenants.  In support of that argument, they rely on *Mora v. Baker Commodities, Inc.* (1989) 210 Cal.App.3d 771, 781-782, which holds that, upon making or renewing a lease, a commercial landlord has a right and a duty to enter and inspect the premises in order to

25

make them reasonably safe from dangerous conditions. NHOM alleged that the trespass occurred to prepare bids to facilitate conversion to a boutique hotel, not for the purpose of evaluating the condition of the premises for a new tenant.

The Cerullo Defendants also argue that Packard was acting as NHOM's leasing agent, and therefore could not have committed trespass, and the other defendants, alleged to be agents of Packard, could not have trespassed. The second amended complaint alleged that Packard was an agent for leasing space, did not have authority to allow others onto the Property to inspect for violations and defaults under lease, and, when committing trespass, "represented himself to the third parties as an agent for [Plaza del Sol]." A fact to be reasonably inferred is Packard acted outside the scope of his authority as agent for NHOM when he allowed persons onto the Property. We assume the truth of facts that can be reasonably inferred from those pleaded. (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

Finally, the Cerullo Defendants argue that NHOM failed to allege actual damages caused by the trespass. An allegation of actual damage is not necessary to a cause of action for trespass to real property because nominal damages can be recovered when no injury is suffered. "Every trespass upon real property imports an injury, for which the law gives nominal damages." (*Davidson v. Devine* (1886) 70 Cal. 519, 520; see *Empire Co. v. Bonanza Co.* (1885) 67 Cal. 406, 409 ["For every trespass upon real property the law presumes nominal damages."]; *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406 ["It is true that an action for trespass will support an award of nominal damages where actual damages are not shown."]; *Civic Western Corp. v. Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 18 [tort of trespass "has always given rise to nominal damages even where there was no proof of actual damage"].)

26

## DISPOSITION

Our disposition as to each respondent is as follows:

Cerullo:  The judgment is reversed as to the 13th cause of action.  The judgment is affirmed as to the ninth through 12th causes of action.

Plaza del Sol:  The judgment is reversed as to the 13th cause of action.  The judgment is affirmed as to the ninth through 12th causes of action.

Artz:  The judgment is reversed as to the 13th cause of action.  The judgment is affirmed as to the seventh through 12th causes of action.

D'Alessio:  The judgment is reversed as to the seventh, eighth, and 13th causes of action.  The judgment is affirmed as to the ninth through 12th causes of action.

VMG:  The judgment is reversed as to the seventh, eighth, and 13th causes of action.  The judgment is affirmed as to the ninth through 12th causes of action.

Packard:  The judgment is affirmed.

NHOM shall be given leave to amend the seventh and eighth causes of action as to D'Alessio and VMG in accordance with this opinion.

Because all parties prevailed in part, no party shall recover costs incurred on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

27

## APPENDIX

| Cause of Action | Description | Defendants | Disposition in Trial Court |
|---|---|---|---|
| 1 - 6 | Declaratory relief, fraud, breach of contract | The Cerullo Defendants | Voluntarily dismissed without prejudice |
| 7 | *Intentional interference with the Sublease* | Artz, the D'Alessio Defendants, and Packard | Demurrers sustained without leave to amend except NHV dismissed without prejudice |
| 8 | *Intentional interference with the Assignment Agreement* | Artz, the D'Alessio Defendants, and Packard | Demurrers sustained without leave to amend except NHV dismissed without prejudice |
| 9 | *Intentional interference with the Pacific West Agreement* | The Cerullo Defendants and the D'Alessio Defendants | Demurrers sustained without leave to amend except NHV dismissed without prejudice |
| 10 | *Intentional interference with the Maag Note and the Maag Deed of Trust* | Defendants | Demurrers sustained without leave to amend except NHV dismissed without prejudice |
| 11 | *Intentional interference with the Operating Agreement* | Defendants | Demurrers sustained without leave to amend except NHV dismissed without prejudice and Packard granted judgment on the pleadings |
| 12 | *Intentional interference with prospective economic advantage* | Defendants | Demurrers sustained without leave to amend except NHV dismissed without prejudice and Packard granted judgment on pleadings |
| 13 | *Trespass* | Defendants | Demurrers sustained without leave to amend except NHV dismissed without prejudice and Packard granted judgment on the pleadings |
| 14 | Violation of Business and Professions Code section 17200 | The Cerullo Defendants | Voluntarily dismissed without prejudice |
| 15 | Breach of fiduciary duty | Packard | Voluntarily dismissed without prejudice |